ELLA McCLENDON et al., Respondents, v. BANK OF ADVANCE, Appellant.

**St. Louis Court of Appeals, March 2, 1915.**

1. **BANKS AND BANKING: Payment of Forged Check: Right of Recovery.** Under Sec. 10032, R. S. 1909, a bank which pays a check drawn on it, to one who received the check in due course and good faith, or which charges a check to the account of the drawer and credits it to the account of a person who received it in due course and good faith, is precluded from disputing the genuineness of the drawer's signature.

2. ————: **Payment of Raised Check: Right of Recovery.** A bank which pays a raised check is not concluded by its acceptance thereof, but may recover the amount that the check has been raised, on the ground of mistake, where both it and the person to whom the check is paid act in good faith.

3. ————: ————: ————: **Fraud of Payee.** One who raises a check, or takes a check with knowledge that it has been raised, and receives payment thereof from the drawee bank cannot, after the bank has charged back to his account the amount that the check has been raised, recover such amount from the bank, since his conduct savors of fraud.

4. ————: **Payment of Forged Check: Right of Recovery: Fraud of Payee.** A bank which pays a check drawn on it to one who

188MA27

McClendon v. Bank of Advance.

has forged the signature thereto is not precluded by its acceptance thereof, but may recover from the forger the amount paid.

5. **TRIAL PRACTICE: Misconduct of Counsel.** It is prejudicial error for counsel to persist in an effort to introduce evidence entirely irrelevant, incompetent and foreign to the issue, and of a character calculated to prejudice the minds of the jurors against the adverse party, after the court has repeatedly denied the right to do so.

Appeal from Stoddard Circuit Court.—*Hon. W. S. C. Walker*, Judge.

REVERSED AND REMANDED.

*Wammack & Welborn* for appellant; *Mozley & Woody* of counsel.

(1) A bank cashing a check which has been drawn upon it and which has been raised before presentment for payment to such bank without the knowledge or consent of the drawer can recover from the person to whom payment is made the amount by which said check has been raised. Espy, Heidelback & Co. v. First National Bank, 18 Wall. (U. S.) 604; Third National Bank v. Allen, 59 Mo. 311; Bank of Brooklyn v. Westcott, 23 N. E. 900; Bank of N. Y. v. Seaboard Bank, 20 N. E. 632; Rapp v. National Security Bank, 20 Atl. 508. (2) A bank accepting a check only agrees to pay it according to the order of the drawer and only admits that the signature of the drawer is genuine and that he had capacity and authority to draw the instrument and the existence of the payee and his capacity to endorse. As to all other matters the person endorsing and receiving a check guarantees its genuineness. Sec. 10032, 10102, and 10036, R. S. 1909; Rossi v. National Bank of Commerce, 71 Mo. App. 150; Trust Co. v. Bank, 154 Mo. App. 100. (3) Appellant is entitled to make the test of acid for the purpose of demonstrating that the mailing card deposit slip for

$108.67 had been traced and that figures had been added in a different ink from that with which it was originally written. Holzmer v. Metropolitan St. Ry. Co., 169 S. W. 110; Riggs v. Railroad, 216 Mo. 327; Note to Leonard v. Railroad, 15 L. R. A. 223; National Cash Register Co. v. Dlumenhal, 48 N. W. 622; 17 Cyc. 394; 38 Cyc. 1311; 12 Am. & Eng. Ency. of Law (2 Ed.), 411; Farmers, Etc., Bank v. Young, 36 Iowa, 47. (4) The verdict of the jury was the result of passion and prejudice and should not be permitted to stand. Tucker v. Railroad, 66 Mo. App. 141; Joy v. Cale, 124 Mo. App. 575; Neal v. Cunningham Store Co., 149 Mo. App. 57; Spiro v. Transit Co., 102 Mo. App. 250; McClanahan v. Railroad, 147 Mo. App. 386. (5) The court erred in directing the jury to disregard all testimony of the existence of Charles Kester and of his not indorsing the $150 check. (6) The court erred in admitting testimony which was illegal and tended only to prejudice the minds of the jury and counsel for respondents persisted in asking questions which were irrelevant and asked only for the purpose of getting before the jury immaterial matters and prejudicing the minds of the jury against the appellant. 38 Cyc. 1477; Railroad v. Payne, 133 Ky. 539.

*T. D. Hines* for respondents.

(1) It is admitted that the two checks alleged to have been forged were deposited by respondents and respondents' checking account credited with same, and account of drawer charged with same, and deposit-ticket delivered to respondents accordingly. This constituted an acceptance by appellant. It was payment, and payment is tantamount to acceptance. Bank of Commerce v. Mechanics' Bank, 148 Mo. App. 16. (2) When the holder of a check procures it to be accepted, the drawer and all indorsers are discharged from liability thereon. R. S. 1909, sec.

10158. The acceptor by accepting the instrument engages that he will pay it according to the tenor of his acceptance, and admits: (a) the existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument, and (b) the existence of the payee and his capacity to indorse. R. S. 1909, sec. 10032. (4) The law is well settled that a bank is conclusively presumed and bound to know the signature of its customer—in this case James Kinder & Son—when that signature appears as drawer on a check drawn upon that bank, purporting to be signed by the customer. Bank v. Bank, 148 Mo. App. 16; Trust Co. v. Bank, 154 Mo. App. 100. (5) When the drawee of a check to which the name of the drawer has been forged pays it to a bona-fide holder, he is bound by the act and cannot recover the payment. Having paid or accepted it, he can neither repudiate the acceptance nor recover the money paid. Bank v. Bank, 148 Mo. App. 16-17; Price v. Neal, 3 Burr, 1354; For compilation of cases, see 10 L. R. A. (N. S.) 49. (6) The question of whether respondents were bona-fide holders of the two checks or not was a question of fact which was submitted to the jury upon instructions declaring the law as it is above stated to be. (7) The evidence of witness Jenkins, appellant's cashier, when testifying about the alleged forged and altered checks, using his words, "in ordinary business we just glanced over them," "I saw in a moment when my attention was called to it"—this last statement referring to the James Reagan check alleged to have been raised from $14.60 to $44.60—shows conclusively that appellant, through its cashier, exercised no care in accepting the alleged raised checks. This cashier convicted appellant of negligence in handling the checks alleged to have been raised. In such cases the negligent party must bear the loss, and not the bona-fide holders. 2 Daniel on Negotiable Instruments (2 Ed.), sec. 1661; Farmers' and Merchants' Bank v.

Bank of Rutherford, 88 S. W. 939; Howard v. Mississippi Valley Bank, 26 Am. St. 105; Bank of Commerce v. Mechanics' American Bank, 148 Mo. App. 20. (8) There was no proper foundation laid for the proposed dramatic and spectacular offering of what counsel are pleased to call the "acid test" of respondents certificate of deposit for $108.67.

NORTONI, J.—This is a suit for a balance of deposits made by plaintiffs with defendant bank. Plaintiffs recovered and defendant prosecutes the appeal.

Plaintiffs, Ella McClendon and William McClendon, are copartners and as such conduct a mercantile business or store, under the firm name of Ella McClendon & Company at Sturdivant, while defendant is an incorporated banking institution, doing business in Advance, a place not far distant from Sturdivant.

The suit involves one item of $108.67, said to have been deposited by plaintiffs with defendant on August 3, 1910, and for which it is asserted defendant gave plaintiffs credit on the books of $8.67 only, and the amount in dispute with respect to this is $100. This matter may be put aside for the present, in the view we take of the case, because other items of deposit which are said to involve certain altered or raised checks and two forged checks are for immediate consideration, in view of the fact that the court obviously misdirected the jury with respect to the law of the case touching raised checks and treated them all under the rule pertaining to forgeries of the signature of the drawer.

The facts relevant to the matter for present consideration are substantially as follows:

Plaintiffs conducted a store at Sturdivant and maintained a checking account with defendant bank at Advance, with which they made frequent deposits; while James Kinder & Son, copartners, conducted a

sawmill near by at Eaglett.    James Kinder & Son also maintained a checking account with defendant bank, made deposits therein, and drew checks thereon. In conducting the sawmill business, James Kinder & Son paid their workmen by issuing checks to them on defendant bank, and such checks were usually presented to plaintiffs, Ella McClendon & Company, at their store at Sturdivant and cashed by them.    After having cashed the checks, it appears plaintiffs forwarded them by mail to defendant bank for deposit. Upon receipt of the checks thus forwarded by plaintiffs, the bank would deposit them to the credit of plaintiffs, Ella McClendon & Company, and charge the account of James Kinder & Son with the amount so credited.

During the summer of 1910, James Kinder & Son were informed by the bank that their account was overdrawn and went about investigating the matter, for it is said there should have been a balance to their credit at that time.    The investigation revealed that some checks issued by James Kinder & Son to as many different men in their employ had been altered or raised in amount, after issue, and were cashed by plaintiffs at their store and deposited in defendant bank by plaintiffs, for which they received credit. Moreover, two checks appeared to have been forged— that is, the signature of James Kinder & Son forged thereto—and those checks were likewise cashed by plaintiffs at their store and forwarded to the bank and deposited to their account.    All of those checks, either raised or forged, were charged at the time, for the amounts appearing on their face, to the account of James Kinder & Son in the bank.

The several altered checks—that is, checks raised in amount—were as follows:    James Kinder & Son had issued a check in favor of James Reagan for $14.60 and this check was raised in amount so as to appear to be for $44.60, and being so raised, was

deposited by plaintiffs in defendant bank to their account. James Kinder & Son had issued one check in favor of Bill Reagan for $3.78 and this check was raised in amount, so as to appear to be a check for $30.78, and after being so raised, was deposited by plaintiffs in defendant's bank, for which they had been given credit. James Kinder & Son had issued one check to James Davis for $16.04 and this check was raised in amount, so as to appear to be a check for $66.04, and after being so raised, was deposited by plaintiffs in defendant bank, for which they were given credit. James Kinder & Son had issued one check to Albert Davis for $17.74 and this check was altered and raised in amount, so as to appear to be a check for $70.74 and after being so raised, was deposited by plaintiffs with defendant bank, and they were given credit therewith for such amount. James Kinder & Son had issued one check to James Fielding for $17.89 and this check was raised in amount, so as to appear to be a check for $77.89 and after being so raised, was deposited by plaintiffs with defendant bank to their account, and for which they were given credit. All of the checks above mentioned were duly endorsed by the respective payees mentioned therein to plaintiffs.

It appears, too, that plaintiffs deposited with defendant bank one check for $250, purporting to have been issued by James Kinder & Son in favor of James Fielding, and that they received credit for such amount in their account with the bank. This check purports to have been signed by James Kinder & Son and endorsed by James Fielding to plaintiffs, though the signature of Kinder & Son is said to be a forgery. Also, plaintiffs deposited with defendant bank one check for $150, purporting to have been drawn by James Kinder & Son in favor of Charles Castor. This check appears to have been endorsed by Charles Castor and James Fielding to plaintiffs, and appears to

have been signed by James Kinder & Son, though their signature to the check is said to be a forgery. At the time of the deposit of the several checks mentioned by plaintiffs in defendant bank, the bank credited plaintiffs' account with the amounts represented on their face, after being so raised, and charged such amounts against the account of their customer, James Kinder & Son, and it appears the overdraft above referred to was thus occasioned. Investigation revealed circumstances of suspicion, at least, against plaintiffs tending to suggest that Ella McClendon, of the firm of McClendon & Company, had altered and raised the several checks above itemized, after having purchased them from the payees and before depositing them with the bank, and, also, it may be that she had forged the name of James Kinder & Son to the two checks—one for $250 and the other for $150—likewise the endorsements thereon, and deposited them with defendant bank. It is true there is no direct evidence to this effect, but the case abounds with circumstances giving rise to a strong inference suggesting that Ella McClendon, who it appears was the manager of plaintiffs' store and conducted the business generally pertaining to the cashing and depositing of checks, altered or raised the amounts of the five checks above itemized and, it may be, forged the signature to the check for $250 and the one for $150.

In this view, defendant bank insisted on plaintiffs, Ella McClendon & Company, making good the entire loss entailed, and withheld a sufficient amount of money of plaintiffs on deposit to that end. Plaintiffs insisted that the checks which appear to be raised in amount, were altered and raised before they cashed them, and there is an abundance of evidence tending to prove that the forged checks were signed James Kinder & Son by A. T. Kinder of that firm. Four other witnesses gave evidence tending to support the testimony of Ella McClendon with respect to the alleged forger-

ies, that such checks were genuine and actually drawn by A. T. Kinder, and the evidence on the part of plaintiffs is abundant to the effect that all of these checks were received by them in due course and in good faith for the amount they appeared to represent at the time they were deposited with the bank. In other words, there is an abundance of evidence on the part of plaintiffs tending to prove that the $150 and the $250 checks involved were genuine and not forgeries at all, also that the five checks which appear to have been altered and raised in amount were raised, if at all, before being presented to plaintiffs at the store for the purpose of being cashed, and this, too, without the knowledge of plaintiffs.

Defendant bank continuing in its refusal to pay plaintiffs the balance represented by the respective amounts the several checks were raised and those of the forged checks as well, also the $100 discrepancy on the item of deposit on August 3, 1910, plaintiffs instituted this suit to recover the same.

From what has been said, it appears that there are two classes of checks to be considered here: First, five separate checks, which bore the genuine signature of the drawer and the genuine endorsement of the payee, but were altered by someone through being raised in amount after they were issued; and, second, two separate checks which are said to be forgeries, in that they bore a spurious signature.

Two separate and distinct rules of law obtain with respect to the different subject-matters, for, as to the altered and raised checks, defendant bank is not concluded by the mere act of acceptance, while such may be true, in a proper case, in so far as the forged signature of its customer is concerned, for the bank is presumed to know the signature of its depositors. But the court treated both subjects on the same plane—that is, as if defendant bank was concluded by its acceptance of the raised checks from a holder in due course and in good

faith, precisely as if they were forgeries in that they bore the forged signature of its customer, the drawer, and such is not the law.

It is entirely true that the acceptor, by accepting the instrument—and a bank who pays the check of its customer is such—admits the existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument, and the existence of the payee and his capacity to endorse. [See section 10032, R. S. 1909.] In so far as the two alleged forged checks are concerned—that is, those which bore the alleged spurious signature of James Kinder & Son—the bank is concluded, by its acceptance and payment of them, from disputing the signature of its customer, provided, of course, that Ella McClendon & Company received such checks in due course and good faith. [See Bank v. Bank, 148 Mo. App. 1, 127 S. W. 429; Missouri, etc. Trust Co. v. Third Nat'l Bank, 154 Mo. App. 89, 133 S. W. 357.

But such is not true with respect to the five checks above described which bore the genuine signature of James Kinder & Son, the drawer, and were altered or raised after their issue. Touching these, the mere acceptance, as by receiving and cashing them—that is, charging them to the account of Kinder & Son and passing the amount they represented to the account of plaintiff—in nowise concludes the bank if it was without fault, for such a matter is reckoned with in the law on the ground of mistake, where it appears both the bank and the depositor are innocent—that is, act in good faith.

In such circumstances, both the Supreme Court of the United States and our own Supreme Court thus state the law on the subject.

"The principle that money so paid under a mistake of the facts of the case can be recovered back is well settled, and in the case of raised or altered checks so paid by banks on which they were drawn there are

numerous well considered cases where the right to re-
cover has been established, when neither the party
receiving nor the party paying has been in any fault or
blame in the matter.'' [See Espy v. Bank of Cincin-
nati, 18 Wall 604, 85 U. S. 604; Third National Bank
v. Allen, 59 Mo. 310, 314.]

Therefore, though it appears that plaintiffs re-
ceived these altered and raised checks in good faith and
without fault and deposited them with defendant, who
accepted them likewise in good faith and without fault,
according to their raised amounts, defendant may with-
hold a sufficient amount to reimburse the losses entailed
on account of them alone—that is, the amount the re-
spective checks were raised—for it is entitled to this on
the grounds of mistake. It goes without saying, if
plaintiffs raised the checks, as defendant's evidence
tends to prove, or took them with knowledge of the
fact of their being altered and raised, no right of re-
covery exists on the part of plaintiffs with respect to
such raised amounts, for obviously such savors of
fraud. Then, too, if plaintiff Ella McClendon forged
the name of the drawer, James Kinder & Son, to the
two checks—one for $250 and one for $150—and de-
posited them with defendant, the bank ought not to be
concluded as to these on the presumption that it is
bound to know the signature of its customer, for no one
may be allowed the benefit of his own wrong and such
would be the result in denying defendant bank the
right to show the fraud and covin of the forger and
thus awarding to the wrongdoer the benefit of the for-
gery.

The court instructed the jury at the instance of
plaintiff as follows:

"The court instructs the jury that if you believe
from the evidence that the plaintiff during the year
1910, and not later than August 3, 1910, delivered to de-
fendant bank various sums of money, drafts and checks
representing money of which plaintiffs were innocent

holders for value, for deposit, and that defendant placed the same to the credit of plaintiffs and subject to plaintiffs' checks, and subject to withdrawal by plaintiffs, at and before November 15, 1911, and if you further find from the evidence that plaintiffs drew out of defendant bank all of said sums of money except the sum of $734.67, or any other sum, and that plaintiffs have demanded payment, and that payment has been refused by defendant, your verdict will be for the plaintiffs.''

This instruction authorizes a recovery on account of both the raised checks and the forged checks as if they were under the rule of law which obtains with respect to the forgeries of the signatures of the depositor and is erroneous in so far as the raised checks are concerned. The error seems to run throughout the case, for it appears in other instructions as well and is manifestly prejudicial.

It is unnecessary to further discuss the various propositions raised in the briefs, except to say, on consideration of the entire record, numerous errors appear in the rulings of the court on the reception and rejection of testimony; also the conduct of the trial was prejudicial to defendant in that plaintiff persisted and insisted in an effort to introduce evidence entirely irrelevant, incompetent, and foreign to the issue, after the court had repeatedly denied the right to do so, and the evidence so offered was of a character calculated to prejudice the minds of the jurors against defendant and its cause. On a retrial this course should not be pursued, for enough appears in the record concerning this alone to justify reversing the judgment and awarding another trial of the issue. [See 38 Cyc. 1478.]

The judgment should be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.