CENTRAL NATIONAL BANK, Respondent, v. F. W. DROSTEN JEWELRY COMPANY, Appellant.

St. Louis Court of Appeals.   Opinion Filed March 2, 1920.

1. BANKS AND BANKING: Forged Checks: Name of Payee Forged and Check Raised: Payment by Bank: Admission that Signature was Genuine and Sufficient Funds.   The cashier of a bank in stating that a check presented to it by the treasurer of the purported payee was good, or all right, and in paying the same, thereby admitted that the signature of the drawer was its genuine signature, and that it had sufficient funds on deposit to cover the amount named in the check, there being nothing in the inquiry propounded by the treasurer of the payee to the cashier, and nothing in the cashier's references, to indicate to the cashier that the treasurer of the payee meant to propound to him, directly or inferentially, the query as to whether or not the drawer of the check originally drew the same to the payee in whose name it appeared therein, and for the amount therein.

2. ———: ———: ———: Payment on Mutual Mistake: Action for Money Paid: Right of Recovery.   Where the treasurer of the purported payee in a check, presented same to the cashier of a bank inquiring if it were good, and was informed by the cashier that it was good, or all right, when in fact the payee's name, as well as the amount recited therein, had been changed and inserted by forgery, and there was no evidence or suggestion upon the face of the check of its having been changed as to the name of the payee or altered as to the amount for which it was originally

drawn, and it is impossible to classify the error of the bank as equal to or greater than the mistake of the payee, and the mistake may be said to have been mutual when the bank paid the check, *held* that when the payee presented such check to the bank, he in law represented that the check was genuine, and the payment of the check to the payee was, because of the forgery of the name of the payee and the amount thereof, without consideration, the moneys so paid the payee by the bank in equity and good conscience never ceased to be the money of the bank, and that the bank was entitled to recover the same of the payee.

3. ———: ———: ———: ———: **Bank Need Not Return Check Nor Make Demand Before Suit.** Inasmuch as a forged check is worthless, it is not necessary to return a forged check or make demand of payment of the payee prior to instituting suit to recover money paid thereon.

4. **TRIAL PRACTICE: Evidence: Directed Verdict on Oral Testimony not Admitted to be true Erroneous: Question for the Jury.** In an action by a bank to recover money paid on a forged check, etc., where the allegations of the petition were denied by answer, the burden of proof being then upon plaintiff, who adduced oral testimony not admitted to be true, and the credibility of the witnesses and the weight to be given their testimony, in the first instance, being for the jury, it was error for the trial court to determine same for the jury by directing their verdict for plaintiff.

Appeal from the Circuit Court of the City of St. Louis.. —*Hon. Charles B. Davis,* Judge.

REVERSED AND REMANDED.

*E. T. & C. B. Allen* for appellant.

(1) If the defendant may in good conscience retain the money, there can be no recovery. Kostuba v. Miller, 137 Mo. 174; Hellman v. K. & L. of S., 198 Mo. App. 315; Richardson v. Drug Co., 92 Mo. App. 521; Bradley Lumber Co. v. Bank, 206 Fed. 45. (2) Defendant's right need not be better than plaintiff's. It is enough if it is equal. 27 Cyc. 874; 4 Waite A. and Defenses, 511; Holly v. Missionary Society, 180 U. S. 284. (3) The defendant's right is superior if he cannot be put substantially in *statu quo*. Mathews v. Kansas City, 80 Mo. 231; Crocker Nat. Bank v. Nevada Bank, 139 **Cal.**

564, 63 L. R. A. 245; Express Co. v. Bank, 27 Okla. 824. (4) Defendant's right is better if plaintiff has not notified him and offered to return the alleged altered check within a reasonable time. Third Nat. Bank v. Allen, 59 Mo. 310; 3 Randolph on Commercial Paper, sec. 1740; National Bank v. Met. Bank, 107 Ill. App. 461; Schroeder v. Harvey, 75 Ill. 638. (5) Unless the money received by the defendant was the plaintiff's, it has no equities whatever. Walker v. Conant, 69 Mich. 321; Russell v. Richards, 6 Ala. App. 73; Ex parte Richards, 180 Ala. 580. (6) The plaintiff was bound by its representations to the defendant that the check was all right for all purposes, and has no equities. Espy v. Bank, 85 U. S. 604. (7) The mistake, if any, was not mutual, but that of the plaintiff alone, and he has no equr̃··· as against the defendant. Mason v. Trust Co., 192 Mo. App. 528. (8) Where the allegations of the petition are denied by the answer and oral evidence is offered, the defendant is entitled to have the jury pass upon the evidence, although the offers none at all. Johnson v. Grayson, 230 Mo. 380.

*Jeffries & Corum* and *Arthur J. Freund* for respondent.

(1) Where a check drawn upon a bank has been fraudulently raised after it was drawn, the rule is well settled that it may be recovered back by the bank from the party to whom it was paid on the ground that the payment was made without consideration and by mistake. The fact that the drawee Bank gave a cashier's check in lieu thereof, is not conclusive against the Bank. Nor is the Bank precluded from showing an alteration, by its cashier's declaration, after he has examined the check, that it is right in every particular. McClendon v. Bank of Advance, 188 Mo. App. 417; Third Nat. Bank v. Allen, 59 Mo. 310; Espy v. First Nat. Bank of Cincinnati, 18 Wall. 604, 21 L. Ed. 947; Marine Nat. Bank v. The National City Bank, 59 N. Y. 67, 76 et seq.; White

et al. v. Continental Bank, 64 N. Y. 316; New York Produce Exchange Bank v. Twelfth Ward Bank of the City of N. Y., 135 N. Y. (App. Div.) 52; Metropolitan Bank v. Merchants Bank, 182 Ill. 367; Birmingham Nat. Bank v. Bradley, 103 Ala. 118; Park .et al. v. Roser et al., 67 Ind. 500; Girard Trust Co. v. Boyd, 45 Pa. Sup. Ct. 285; State Bank of Houston v. First Nat. Bank of Houston, 45 Tex. 203. (2) (a) There is no presumption of loss or disadvantage to the defendant because the evidence does not show that a demand was made upon it by the plaintiff or that plaintiff tendered the altered check, and in the absence of such affirmative evidence the Bank is not estopped from recovering from the defendant the amount of the payment made. Wind v. The Fifth Nat. Bank et al., 39 Mo. App. 72; P. & M. Coal Co. v. Laning-Harris Coal Co., 193 Mo. App. 664, 669. (b) Defendant's answer is an implied admission that timely notice was given and demand made. Buttron v. Bridel, 228 Mo. 622; Kinsley v. Leath, 178 S. W. 453; Rieger v. Mechanics Ins. Co., 69 Mo. App. 674; Breckinridge v. American Ins. Co., 87 Mo. 62. (c) Under the statute defendant is not permitted to complain of a lack of failure of demand or tender by plaintiff. · Section 2285, R. S. 1909. (3) The court committed no error in granting the peremptory instruction. Ferber v. Bolt & Nut Co., 185 Mo. 301; May v. Crawford, 150 Mo. 504; State ex rel. v. O'Neil, 151 Mo. 67, 89; Reichenbach v. Ellerbe, 115 Mo. 588, 595; Jackson v. Hardin, 83 Mo. 175; Neet v. Telegraph Co., 170 Mo. App. 603, 609; Howard v. Hurst, 156 Mo. App. 205; Powell v. Price, 111 Mo. App. 320; Pritchard v. Hooker & Nixdorf, 114 Mo. App. 610; Poindexter v. McDowell, 110 Mo. App. 236; Mosby v. Commission Co., 91 Mo. App. 504; National Brewing Co. v. Lindsay, 72 Mo. App. 594; Bank v. Hanline, 67 Mo. App. 483, 487.

STATEMENT.—On January 15, 1917, plaintiff filed his petition in which it is averred that on January 5, 1915, the National Paper Company drew a check on its

account at the plaintiff bank for the sum of $14.95, payable to the order of the Polar Wave Ice & Fuel Company; that this check was deposited in the mail, addressed to the Polar Wave Ice & Fuel Company, and in some manner unknown to plaintiff the check came into posession of a third party and was never received by the payee; that thereafter, without the knowledge or consent of either the drawer or the payee of the check, it was altered, the name of the payee being changed to F. W. Drosten Jewelry Company and the amount raised to $445; that it afterwards came into the posession of defendant and was presented by defendant to plaintiff for payment; that thereupon plaintiff, without knowledge of any alteration having been made in the name of the payee or the amount of the check, cashed it and delivered to defendant the sum of $445; that immediately upon discovering "said forgery" plaintiff made demand upon defendant for the amount paid without avail. Judgement is prayed for the sum of $445, with interest and costs.

Defendant's answer, admitting its incorporation, denies every other allegation. Further answering it is averred, that on January 6, 1915, defendant sold and delivered to a party, who represented himself to be R. F. X. Smith, president of the National Paper Company, a pair of diamond earrings of the value of $445; that the party representing himself to be Smith offered in payment of the earrings a check of the National Paper Company to the defendant company for the sum of $445; that defendant, before delivering the earrings, took the check to plaintiff bank, upon which it had been drawn, and inquired whether or not the check was good; that upon being informed by the officials of plaintiff bank that it was good and relying upon such representations being true, the representative of defendant asked for and received the proceeds of the check in the form of a cashier's check and thereafter delivered the earrings; that the check of the National Paper Company furnished no evidence on its face of any alteration thereon and

was thereafter collected by plaintiff from the National
Paper Company; that plaintiff herein instituted suit in
the circuit court of the city of St. Louis, returnable to
the June term, 1915, of that court, against this defendant
for money had and received, and in the petition in that
case alleged substantially the same facts contained in
the petition in the present case; that when that case was
called for hearing on November 8, 1916, plaintiff dismiss-
ed that suit, giving as a reason therefor that at that time
it had no cause of action against the defendant for
money had and received because the sum of $445 had
been theretofore collected from the National Paper Com-
pany; that subsequent to the dismissal of that cause
plaintiff gave no notice or made no demand whatsoever
on defendant for the payment of the money; that there-
after on January 16, 1917, plaintiff filed the present
action against defendant. The answer proceeds:
''Wherefore, by reason of the premises defendant alleg-
es that plaintiff is estopped now to claim that the pro-
ceeds of said check in the hands of defendant in equity
and good conscience belongs to plaintiff,'' and asked that
it go hence with its costs.

To this answer plaintiff filed its reply, wherein it
admits that on January 6, 1915, defendant sold and de-
livered to a party who represented himself to be R. F. X.
Smith, president of the National Paper Company, a pair
of diamond earrings of the value of $445; that that par-
ty offered in payment thereof a check of the National
Paper Company payable to the defendant company for
that sum. It is further admitted that defendant, be-
fore delivering the earrings took the check to plaintiff
bank, whereon it was drawn, and inquired whether or
not the check was all right, and upon being informed
by the officials of that bank that it was all right, defend-
ant asked for and received the proceeds of the check in
the form of a cashier's check, all other allegations
contained in the answer being denied.

The cause was tried before the court and a jury and
at the conclusion of the evidence in the case the court,

at the request of plaintiff, instructed the jury that under the law and all the evidence their verdict must be for plaintiff in the sum of $445 with interest at the rate of six per cent. per annum from January 15, 1917. The jury returned its verdict accordingly. Judgment following, defendant filed a motion for new trial and exceptions to that being overruled, has duly appealed.

At the trial plaintiff offered in evidence a check reading as follows:

"St. Louis, Jan. 5, 1915, No. 2905.

National Paper Company,

Pay to the Order of F. W. Drosten Jewelry Co.,

$445.00

Four Hundred and Forty Five 0/00 Dollars.

NATIONAL PAPER COMPANY.

A. M. GOESSLING,

To Central National Bank          Vice-President.

in St. Louis          R. F. X. SMITH,

(Perforated Stamp): 'C. N. B. Paid.'     President.

(Endorsed by the payee)"

This check was objected to by defendant on the ground that there had been no identification of it. Plaintiff then introduced as a witness on its behalf, A. M. Goessling, who testified that he was the vice-president of the National Paper Company and held that office on January 5, 1915; that the check offered in evidence is a check of the National Paper Company which witness wrote himself and that the signature, "R. F. X. Smith" on the check is that of the president of that company. Witness testified that this check is not in the same condition that it was at the time he signed it; as originally made out it was to the order of the Polar Wave Ice & Fuel Co. for $14.95; that he deposited the check, inclosed in a stamped envelope, in a mail box in the city of St. Louis, addressed to the Polar Wave Ice & Fuel Company at their office in that city; that the check is on the regular printed form of the National Paper Company. Witness identified the stub from which this check was drawn, which contained a memorandum of the issue of the check,

reading as follows: "January 5, 1915, 2905, Polar Wave Ice & Fuel Company. Salary acct. A. M. G." In the column to the right of the stub appear the numerals "$14.95," the number, 2905, represents the serial number of the check. On January 16, 1915, witness sent a duplicate check, numbered 2960 to the Polar Wave Ice & Fuel Company for $14.95, to replace the former check, No. 2905.

On cross-examination witness testified that he discovered on January 16, 1915, or some time prior to that, that check No. 2905 had been lost or mislaid and then sent the Polar Wave Ice & Fuel Company a duplicate; at that time knew that the National Paper Company's account had been charged with $445. Asked if he had acquiesced in the charge he said, "We did not." Asked what effort they made to collect the amount of money from the Central National Bank, witness answered that they had demanded of them to place that amount to the credit of the Paper Company. "And they refused?" asked counsel, to which witness answered "They did not refuse." Asked when the bank had placed it to the credit of the Paper Company, witness answered that he did not remember the exact date; believed it was not in 1915 nor in 1916; believed it was after the bank tried to settle the question with the Drosten Jewelry Company without taking it to court. Asked if he did not know as a matter of fact that the bank had brought suit against the Drosten Jewelry Company and dismissed the suit and that afterwards the bank had credited the Paper Company with this check in January or February, 1917, witness answered: "We were under the impression they had credited our account prior to that." Asked if the bank had told his company this year, that is 1917, that they had credited the Paper Company's account that year, witness answered, "Yes;" that their bank balance showed it. Asked if the bank balance of the Paper Company prior to 1917 showed it had been credited, witness answered that it did not show a credit prior to 1917. Plaintiff then introduced in evidence memoranda from

the books of the plaintiff bank, which it was agreed on part of defendant were correct, that is, that the record of the plaintiff bank shows January 6, 1915, a charge of $445 against the National Paper Company; that the cashier's check blotter contains an entry of January 6, 1915, of the issue of cashier's check No. 65143 to F. W. Drosten Jewelry Company for $445, paid January 7, 1915. It was admitted that the minutes of the board of directors of plaintiff bank showed authorization of a credit to the National Paper Company's account and charging off the amount to profit and loss of $445, that being a record of January 12, 1917, the general ledger showing an entry of that date of the $445 charged for profit and loss and crediting the National Paper Company, on January 13, 1917, with that amount.

Plaintiff introduced evidence to the effect that the books of the Polar Wave Ice & Fuel Company show that it had received check No. 2960 from the National Paper Company for $14.95 on the 18th day of January, 1915, and entered as a credit on the 19th; that the records of that showed the receipt of no other check of that amount from the National Paper Company.

Plaintiff then introduced S. G. Drosten as a witness, who testified that he was the treasurer of the defendant company and was such in January, 1915. Shown the check for $445 before referred to, he stated that it was handed to him by one of their salesmen—a Mr. Miller; handed to him about two o'clock on January 6, 1915. Witness took the check to the Central National Bank to see if it was good; had a conversation with the cashier of the Central National Bank; asked that cashier if this check was all right. He said it was; asked him if he would give me (witness) a cashier's check for it and the cashier said he would; took him to a Mr. Kingsland or Kingsbury and ordered him to make out a cashier's check, which was made out and delivered to him and was cashed by the defendant company, that company receiving the money on it. Witness had said to the cashier of the plaintiff bank, "Is this check good?" He

said, "Yes," and Mr. Drosten said, "Can I have a cashier's check for it?" and the cashier said he could. That, said the witness, was the entire extent of his conversation with the cashier with reference to this check; did not have any other conversation with any other officer or agent or servant of plaintiff bank with reference to the check. After the cashier said it was all right he handed the check for $445 back to witness for indorsement and he indorsed it in the name of the defendant, in the customary form of indorsement of the defendant when he, the treasurer, indorsed checks for it. Asked why he happened to take this check to the Central National Bank and why he did not deposit it in the ordinary way, witness said he did not know the gentleman who had handed it to him, or rather who had handed it to their salesman; he was not known to them. Asked if he was suspicious of the transaction on that account, he said, "No," but he did not know who that was that pretended to be R. F. X. Smith. Asked if that was all he did to ascertain whether or not this check was genuine, witness said that that was all he could do. Asked if he could not have gone to the telephone and called up the National Paper Company and asked them if their president was authorized to buy a four-hundred-and-forty-five-dollar pair of earrings, witness said it would have been "quite impertinent" if he had done that; was handling it in a polite manner as befitting a jewelry store. Asked if he expected the Central National Bank to known whether the man who was in the store of the defendant several blocks away was R. F. X. Smith or not, witness answered, "No," but they could tell whether or not the check was good. On cross-examination witness was asked if when he took the check to the Central National Bank he knew that it had been raised, witness answered that he did not.

The check in controversy, numbered 2905 to the order of F. W. Drosten Jewelry Company for $445, was then introduced in evidence by plaintiff.

At the close of plaintiff's case defendant asked an

instruction to the effect that under the pleadings and evidence plaintiff could not recover. This was refused, defendant excepting.

Counsel for defendant then addressing the court and jury said that defendant "expected to show as part of our case the exact course of this check, but it has already been shown by you by the introduction in evidence of the transcript from the books of the bank, and by the statement of Mr. Drosten as to what he did with the check, so the evidence on the part of defendant will be very brief. From the books of the bank, you will notice this check was immediately charged to the National Paper Company, and the bank collected that money. They retained the $445 as the books show until January of this year, 1917, and during all that time they retained the so-called altered check. The bank charged it up against the National Paper Company and it remained there for two years.

The defendant thereupon offered and introduced in evidence the files in cause No. 97518 to the June term, 1915, of the circuit court, being the case of Central National Bank of St. Louis v. F. W. Drosten Jewelry Company, counsel calling attention to the entry of the minutes in that cause showing that it was dismissed on November 8, 1916. These files introduced show that the petition in that case was in the exact words and figures of the petition in the case at bar except the number of the case and the term of the court to which returnable. Defendant then introduced as part of its evidence, the transcript of the bank's books read in evidence by plaintiff, and before set out.

This was all the evidence in the case. Defendant asked nine instructions, all of which were refused as before stated. These instructions are brought up by respondent by supplemental abstract.

## OPINION.

BARNES, C. (after stating the facts as above)—
The treasurer of the defendant presented the check in-

volved in this controversy. to the cashier of the plaintiff bank, inquiring if it is good, and was informed by the cashier that it was good or all right. It was then that the treasurer of the purported payee inquired if they would give him a cashier's check therefor, and was given a cashier's check as the proceeds of the check being presented to him. The cashier in stating that the check was good or all right, and in paying same, thereby admitted that the signature of the drawer was its genuine signature and that it had sufficient funds on deposit to cover the amount named in the check; two facts which the plaintiff bank had to know, and upon both of which it was correct. There was nothing in the inquiry propounded by defendant's treasurer to the cashier, and nothing in the cashier's references to indicate to the cashier that defendant's treasurer meant to propound to him, directly or inferentially, the query as to whether or not the drawer of the check originally drew same to the payee whose name appeared therein, and for the amount therein.

It is admitted by the parties that there was absolutely no evidence or suggestions upon the face of the check of its having been changed as to the name of the payee or altered as to the amount for which it was originally drawn. Here we have the reputable treasurer of a most respectable business concern of St. Louis personally presenting a check to the cashier of the bank and inquiring if this check is good, being the check in which the party inquiring was named as payee, a situation of itself negativing the idea of any inquiry as to the name of the payee, or the manner of it being named as payee, as well as the amount named in the check.

From the view-point of mistake alone, it is impossible to classify the error of the bank as equal to or greater than the mistake of the defendant without impugning the motive of the defendant, because the defendant in presenting the check for payment, after being satisfied as to the genuineness of the signature and the *status* of

203 M. A.—42

the drawer's account, would be bound by one of two positions, either that it took the check in the mistaken, though honest belief,that it was originally issued to it as payee for the amount therein named, or that it had been changed and altered. In the first instance the mistake may be said to have been mutual when the bank paid the check, otherwise its presention to the bank for payment would be a matter of bad faith. If the defendant did not entertain any suspicions with reference to the check having originally been made payable to it, as well as for the amount recited therein, it is beyond our comprehension to understand how it could possibly have intended to make inquiry with reference thereto of the bank cashier but when defndant's treasurer presented this check to the bank, he in law represented that the check was genuine, and we hold that the payment of the check to the defendant was, because of the forgery (if it be forged) of the name of the payee and the amount thereof without consideration, and that the moneys so paid defendant by plaintiff in equity and good conscience never ceased to be the money of plaintiff, and that plaintiff was entitled to recover the same of defendant; and in this connection will add that as this check, if a forgery, was worthless it was not necessary to return the check nor make demand of payment of defendant prior to the institution of the suit. [Espy v. First National Bank of Cincinnati, 18 Wallace, 604, 21 L. Ed. 947; Leather Mfgs. Bank v. Merchants' Bank, 128 U. S. 26, 9 Sup. Ct. 3, 32 L. Ed. 342; McClendon v. Bank of Advance, 188 Mo. App. 417, 174 S. W. 203; Third National Bank v. Allen, 59 Mo. 310; Marine National Bank v. National City Bank, 59 N. Y. 67; White, et al., v. Continental Bank, 64 N. Y. 316.]

We are therefore of the opinion that the evidence adduced sufficed to warrant a recovery by plaintiff. But we are compelled to reverse the judgment and remand the cause for error on the part of the trial court in peremptorily directing a virdict for plaintiff. The plaintiff's action was not upon the check, it was for money paid. The allegations of the petition were denied by answer,

and the burden of proof was upon plaintiff, who adduced oral testimony, not admitted to be true, to sustain it. The credibility of the witnesses and the weight to be given their testimony, in the first instance, is for the jury, and it was error for the trial court todetermine same for the jury by directing their verdict for plaintiff. [Printz v. Miller, 233 Mo. 47, 135 S. W. 19; Staehlin v. Major, 199 S. W. (Mo. App.) 427.]

In view of the above and foregoing, the Commissioner recommends that the judgment of the circuit court be reversed and the cause remanded.

PER CURIAM:—The foregoing opinion of BARNES, C., is adopted as the opinion of the court. The judgment of the circuit court is reversed and the cause remanded.

*Reynolds, P. J.,* and *Allen, J.,* concur; *Becker, J.,* not sitting.