Cletis Leo MYERS, Plaintiff-Respondent,

v.

Roy Emerson MOFFETT, Defendant-Appellant.

No. 46221.

Supreme Court of Missouri,

Division No. 1.

April 14, 1958.

John J. McFadden, Kansas City, for appellant.

W. Raleigh Gough, Claude M. McFarland, Kansas City, for respondent.

VAN OSDOL, Commissioner.

In this action plaintiff sought recovery of $11,300 for personal injuries and property damage, and defendant by counterclaim sought recovery of $51,600 for personal injuries and property damage sustained when plaintiff's eastbound 1949 Chevrolet coach and defendant's westbound 1951 Plymouth coach collided at a point on U. S. Highway No. 24 six or seven hundred feet east of the intersection of that highway with Jackson County Highway 8–N. The issues of plaintiff's claim and of defendant's counterclaim were submitted to the jury. The jury found for defendant and against plaintiff on plaintiff's claim; and found for defendant and against plaintiff on defendant's counterclaim; awarding defendant damages in the amount of $6,000. Plaintiff filed a motion for a new trial which the trial court sustained (as to all issues) without specifying any ground for the sustention thereof. Defendant filed a motion for a new trial to be limited to the issue of defendant's damages only, which motion was overruled. Defendant has appealed.

Herein upon appeal, defendant-appellant contends the trial court erred in refusing to grant defendant a new trial as to the issue of damages only. Defendant asserts the amount of the award, $6,000, was grossly inadequate. And plaintiff-respondent has assumed the burden of supporting the trial court's action in granting plaintiff a new trial. Supreme Court Rule 1.10, 42 V.A. M.S., pp. 8–9. In supporting the trial court's order, plaintiff contends error in instructing the jury; and contends prejudicial effect of asserted misconduct of defendant's counsel in asking improper questions in the examination of witnesses, and in argument to the jury.

Each of the parties, plaintiff and defendant, had introduced evidence tending to support their respectively pleaded and submitted conflicting factual theories that the other was negligent in driving his motor vehicle on the wrong side of Highway 24.

At about seven-thirty in the evening of a Sunday in February, plaintiff, accompanied by his wife and two small children, one an infant in arms, and his young brother-in-law, was driving eastwardly on east-west Highway 24. Plaintiff crossed the intersection of that highway with north-south Jackson County 8–N; moved along the comparatively level crest of a hill east of the intersection and started down a slight grade, having observed defendant's westbound automobile approaching over the crest of a hill some twelve or thirteen hundred feet to the eastward. It was misting, and the concrete surface of the highway was wet. The visibility was not too good.

Plaintiff testified that his Chevrolet coach was at all times on its right-hand (south) side of Highway 24 and continued on the south side of the highway until the vehicles collided. He was driving thirty-five to forty miles per hour; no other vehicle was preceding him, and he had no occasion to pass around any car moving eastwardly on the highway. Plaintiff further testified that when he first saw defendant's vehicle it was on its right-hand (north) side of the highway; but he said, "They (defendant) started down this little grade and about the time they got to the low part of the grade they swerved over on my side of the road * * *. He (defendant) swerved over pretty fast." Defendant's car was probably seventy-five to one hundred feet away when it came over on plaintiff's side of the road.

Plaintiff's wife testified that her husband was driving on the south, right-hand, side of Highway 24, "and I was looking down at the baby and I looked up and I saw these two headlights coming toward us on our side of the road, and we didn't have time to do any stopping or anything, it was just so close and it was coming so fast."

A witness for plaintiff was the first person to arrive at the scene after the vehicles collided. He had driven westwardly over the hill east of the scene, and had not met any eastbound vehicle.

Defendant testified that he was moving westwardly in his Plymouth coach and that, when he came over the hill east of the place where the vehicles collided, he observed headlights of an automobile (other than plaintiff's) moving eastwardly near the intersection of Highway 24 and Highway 8–N. Defendant was traveling fifty-five to sixty miles per hour. He saw that the car approaching from the west was on its own (south) side of the road. He had moved down across the valley and was going slightly upgrade at the time of the collision. When he was approximately fifty feet from the eastbound vehicle he, for the first time, observed the lights of plaintiff's car. He testified that plaintiff's vehicle was "veering (from behind the preceding eastbound vehicle) out over the center line. * * * It (plaintiff's vehicle) came out just like it was passing." Plaintiff's car "got out right in front" of defendant's. "I put my right hand up to protect my eyes and turned my steering wheel to the right." Defendant could not say whether he had changed the course of his vehicle to the right before the impact of the collision.

Photographs of the damaged vehicles indicate the impact was of great force. The left fronts of both vehicles were demolished. Plaintiff's car, the Chevrolet coach, had come to rest headed northwestwardly with both front wheels north of the "black line" which indicated the center of the pavement. The right front wheel of plaintiff's Chevrolet was north of the "no passing" yellow line in the center of the westbound (north) lane of the pavement. Defendant's vehicle came to rest at a slight angle on the shoulder or berm north of the pavement. It was headed slightly south of west with its demolished left front and wheel resting on the shoulder three or four feet north of the pavement. The left side of the frame of defendant's Plymouth was thrust back-

wardly about six inches; the exhaust pipe was torn off; the drive shaft was torn loose from the transmission; most of the debris, particularly the "shake down" of mud was between the two vehicles, although small parts of the vehicles were scattered generally over the highway; and marks in the mud north of the pavement indicated the Plymouth had slid northwardly. A witness for defendant noticed counterclockwise "slide" or "mud" marks on the north half of the pavement which had been made by the front wheels of plaintiff's vehicle. The witness could not tell where these marks started. He "just saw the termination of them." There was evidence that defendant had drunk beer that evening; and witnesses stated defendant had a "heavy odor of alcohol on his breath" after the collision. Both plaintiff and defendant were injured in the collision, and plaintiff's infant and young brother-in-law were killed.

Plaintiff-respondent contends Instruction No. 8, given by the trial court at defendant's request, was erroneous. The instruction was as follows,

"The Court instructs the jury that in considering the testimony of any witness you should use your common sense, reason and judgment, so that if you find that the testimony of any witness as to facts surrounding the alleged accident is in conflict with physical facts, then you are instructed that you may take into consideration such conflict in determining what weight will be given to the testimony of such witness or witnesses so conflicting."

Plaintiff-respondent argues that the instruction was an unwarranted comment on the evidence and tended to overemphasize the evidence of the positions of the automobiles after the collision.

In the recent case of Roush v. Alkire Truck Lines, Mo.Sup., 245 S.W.2d 8, this court examined an instruction (No. 4 in that case) of almost identical language. Such an instruction is cautionary, and the

giving of the instruction is largely within the discretion of the trial court. The trial court's discretionary action in giving such an instruction is justified if the instruction is supported by evidence of physical facts which are in apparent conflict with the testimony of witnesses. Roush v. Alkire Truck Lines, supra; Phillips v. Vrooman, 361 Mo. 1098, 238 S.W.2d 355. In the instant case, in view of the evidence establishing the positions of the vehicles involved (particularly the position of plaintiff's vehicle) when they came to rest after the collision and the testimony of plaintiff and wife that plaintiff's vehicle was moving on the right side of Highway 24 when the collision occurred, we cannot say the trial court abused its discretion in giving Instruction No. 8. Roush v. Alkire Truck Lines, supra. Nevertheless, it is true that the instruction does bring into bold relief the fact that plaintiff's vehicle had come to rest partially over on the north side of the highway, and the incidence of an apparent conflict between such fact and the testimony of plaintiff and his wife. And, even though the trial court did not err or abuse its discretion in giving the instruction in this case, the fact that the instruction recognized such apparent conflict and instructed that the conflict might be taken into consideration in weighing the testimony of the witnesses so conflicting, in part supplied the foundation for the prejudicial effect of other, but untoward and improper, matters with which we treat infra. As we have implied, the fact or circumstance that plaintiff's vehicle was partly over on the north side of the pavement after the collision could be said to be an established physical fact, but such fact did not necessarily establish that plaintiff's vehicle, prior to and when the vehicles collided, was on the north side of the pavement. The fact that plaintiff's vehicle rested partly on the north side of the road after the collision was but a fact or circumstance for the jury's consideration and evaluation in weighing the circumstance together with the conflicting testimony of the witnesses as to where with reference to the center of the highway the respective vehicles were being driven prior to and when the vehicles collided, and with other shown circumstances of the case. Surely, each of the parties had the right to have his factual theory fairly considered and resolved by the jury without improper and prejudicial interrogation, conduct or argument on the part of counsel for the other.

Plaintiff's witness Closson, a state highway patrolman, had arrived at the scene a few minutes after the collision. In testifying, Closson described generally the scene of the tragedy and spoke in detail concerning the positions of the vehicles, debris and broken-off parts. He also identified photographs as fairly representing the positions in which the vehicles had come to rest after the collision. A photograph, identified as plaintiff's Exhibit 5, also identified as defendant's Exhibit 7, was examined by the witness who said the photograph correctly showed the positions of the two vehicles involved, and which photograph we have in part relied upon in reciting the facts, supra, relating to the positions in which the vehicles involved came to rest after the collision. The witness had not been qualified as an expert, and upon direct examination had not undertaken to give any opinion or conclusion relating to the way the collision had been brought about.

On cross-examination, defendant's counsel asked the witness Closson if he could form "a conclusion as to where the impact occurred between these vehicles." Compare Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242. Here was an apparent design to introduce incompetent opinion evidence by cross-examination of an adversary's witness. The witness was then asked if he found any marks on the south side of the pavement that would indicate this car (the Chevrolet) as having been pulled around from "the south side of the road over to the north side"; whether he found any kind of marks (on the south

side of the pavement) "swinging around over to the north side of the road"; and when two cars collide substantially head-on, "do the rear ends have a tendency to come up in the air?" The witness was also asked, "Can you think of any manner, if this Chevrolet was on the south side of this highway and the way those vehicles are damaged to the front ends, of how that Chevrolet could possibly get over in that position"; would "it be logical, Officer, from your experience in investigation of accidents and studying about kinetic force, where objects come together, would it be logical in this case to assume that these cars collided almost head-on on the south side of the road and wind up in the position shown in those pictures"; and "if this Chevrolet was going over onto the north half of the road * * * and Moffett was pulling off onto the shoulder at the time they collided, can you explain how the cars would get in this position?" The trial court had sustained plaintiff's objections to all of these questions, and yet, as we have seen, counsel for defendant, consistently ignoring the trial court's consistent rulings, persisted in making such inquiries which were clearly intended to elicit conclusions of the witness and which improper questions tended to emphasize the position and to intimate a decisive probative effect of the circumstance of the position of plaintiff's vehicle.

Counsel for plaintiff requested that the trial court reprimand defendant's counsel "for continuing to make these insinuations when he knows that the evidence is inadmissible * * * it is just done for the purpose of prejudicing the jury against the plaintiff * * *." The trial court, *but without the presence and hearing of the jury,* told defendant's counsel to refrain "from asking any further questions touching upon his (Closson's) opinion or estimate as to where the cars were at the time or how they were traveling at the time of the collision." And presently, within the presence and hearing of the jury, the trial court orally advised that "it is the prerogative and function of the jury to determine how the collision took place and where it took place and whose fault it was."

Notwithstanding the admonition, counsel for defendant again asked the question—"Where two portions of a car come together, where there are chrome portions of the car and those chrome portions drop down, generally do you expect to find the broken parts at or near the place where the cars collide, if they collide hard and stop there?" And counsel for defendant then referred to a report which had been prepared by the witness an hour or so after he was at the scene of the casualty. This report had not been introduced into evidence.

The first question was—"When you got around to making up your report, did you realize that you had seen the left front of this Chevrolet clear over to the north of this yellow line in the center of the north half of the highway?" Counsel for defendant then further referred to the report (which apparently had indicated that the Chevrolet had come to rest on the south shoulder of the highway, or partially so) and the question was asked, "Now, at the time you made up that report did you have the benefit of seeing the pictures of the cars in the exact position that they were in when you first arrived there?" The further question was asked—"When you made up the report, because of the darkness out there were you confused as to in what position of the highway you found these cars sitting when you first arrived there?" And again—"Do these pictures, both that the plaintiff has introduced and that the defendant has introduced here, show that your recollection of where you found these cars when you arrived there was incorrect when you made up your report?"

As stated in Ryan v. Campbell "66" Express, Inc., Mo.Sup., 304 S.W.2d 825, if every case in which improper questions were asked was reversed, few verdicts.

would stand. But, in the instant case, we have seen that, although the trial court had sustained objections to each and all of the questions (save one which upon objection was reframed) to which we have referred supra, counsel for defendant had persisted in pursuing the same lines of interrogation—first, in asking for the conclusions of the witness as to the factual significance of the circumstance that the front of plaintiff's car projected northwardly over the center of the highway; second, by improperly referring to the officer's report, which we have stated was not introduced into evidence, and by which improper manner of interrogation the fact that plaintiff's car did extend over the center of the highway to the northward was intentionally re-emphasized and reimpressed upon the jury; that is, by overriding the trial court's rulings, defendant's counsel was, by his improper questions over and over again stressing and in effect insinuating or obliquely arguing to the jury a decisive probative effect of the position of plaintiff's vehicle.

Moreover, by these persistent lines of improper inquiry plaintiff's counsel was put in an apparent position before the jury of having persisted in causing the trial court to exclude testimony of plaintiff's own witness, which testimony the jury may well have believed would be of great value in determining the issues of the case. It has been said that perhaps with laymen, whether justified or not, the testimony of a highway patrolman carries with it the force and weight of his important official position. Meyers v. Smith, Mo.Sup., 300 S.W.2d 474. And here in the instant case the persistent questioning of the patrolman Closson implied that his answers, if admitted into evidence, would be favorable to defendant in tending to show a decisive factual significance of the position of plaintiff's vehicle. That is to say, plaintiff's counsel was forced, by the improper questions propounded by defendant's counsel, to be placed in the false light of suppressing material evidence by his own objections. It is rec-

ognized in given cases that a wilful attempt to force one's opponent to be placed in the light of suppressing facts by his own objections or an attempt to present improper matters to the jury may substantially influence a verdict, despite the action taken at the time by a trial court in sustaining objections or otherwise. Ryan v. Campbell "66" Express, Inc., supra; Moore v. Shelly Motors, Mo.App., 225 S.W.2d 953; McClendon v. Bank of Advance, 188 Mo.App. 417, 174 S.W. 203; Annotation 109 A.L.R. 1089; 53 Am.Jur., Trial, § 459, pp. 360–363.

As we have seen, the physical fact that plaintiff's automobile had come to rest partly across the center line of the highway and the testimony of defendant were in apparent conflict with the testimony of plaintiff and his wife in tending to support and refute the issue as to which of the parties had been driving his vehicle on the wrong side of Highway 24. Having emphasized the circumstance of the position of plaintiff's vehicle, after it had come to rest, by improper questions in his cross-examination of the witness Closson, and also, in effect, by the same improper questions, having detracted from the value and weight of the testimony of plaintiff and wife, it remained for defendant's counsel in his argument to the jury to improperly bolster the dependability, integrity and, by inference, the credibility of defendant as a witness.

Turning now to the transcript of the argument to the jury we quote excerpts from the argument of counsel for defendant, also the trial court's ruling on an objection thereto.

"Mr. McFadden (counsel for defendant): * * * Now, I have known Roy (defendant Moffett) for about eight years. I have had business for his family, little odds and ends for his family for ten years.

"Mr. Gough (counsel for plaintiff): I object to any personal statements of the attorney not in evidence in this

case—any personal experiences of the attorney are not in evidence.

"The Court: Objection overruled.

"Mr. McFadden: I know this family as a good, hard-working family, and Roy is one of the best of the outfit; and Roy, from my experiences with him, has been a very fair, honest, and dependable fellow. If it weren't for the fact that this man (defendant Moffett) had two beers out there, I don't think there would be a shadow of a doubt as to what happened, and I still, in my mind, I think there is no doubt that this accident not only happened on the wrong side of the road for Mr. Myers, but happened right over in here at a point approximately here (indicating) * * *."

There can be no doubt defendant's counsel was telling the jury that counsel personally believed defendant was a fair, honest and dependable fellow and, by inference, was personally assuring the jurors they could rely upon his testimony. It will be further noted that, for "over measure," defendant's counsel threw in his own personal opinion and conclusion as to where the collision occurred with reference to the center of Highway 24. Other argument of defendant's counsel was at least on the border line of impropriety in tending to inform the jury of the fact, as had been indicated on *voir dire*, that plaintiff had liability insurance, and in tending to suggest that the insurer, not plaintiff, would be required to pay such damages as might be awarded defendant. The argument was as follows: "We bear no malice toward Cletus Myers and his wife. I feel sorry for these people. We bear no legal malice toward them. But I want you to bring in a fair-sized verdict from them and leave it up to me as my client's attorney as to how I collect it." See and contrast Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S.W.2d 961; and Douglas v. Twenter, 364 Mo. 71, 259 S.W.2d 353.

We have the opinion that the cumulative prejudicial effect of matters with which we have treated supra—the conduct of defendant's counsel in the interrogation of witnesses and in argument to the jury, in combination affected the trial of the case in such a way as to have a substantial prejudicial influence on the verdict rendered by the jury in this case. State ex rel. S. S. Kresge Co. v. Shain, 340 Mo. 145, 101 S.W.2d 14; Moore v. Shelly Motors, supra; cases collated in the Annotation 109 A.L.R. 1089, supra. Although the trial court erred in failing to specify the ground or grounds on which plaintiff's motion for a new trial was sustained (Section 510.330 RSMo 1949, V.A.M.S.), and we do not presume the new-trial order was sustained on any discretionary ground or grounds (Supreme Court Rule 1.10, supra), these matters with which we have treated were called to the trial court's attention in plaintiff's motion for a new trial and they demanded the exercise of the trial court's sound judicial action; and we have the opinion these matters must have been so substantial in their influence upon the jurors in considering upon their verdict that a refusal to grant a new trial would have been, to say the least, an abuse of the trial court's discretion in this case.

Since the trial court's order granting plaintiff a new trial is upheld, the trial court did not err or abuse its discretion in overruling defendant's motion for a new trial to be restricted to the issue of defendant's damages.

The trial court's order awarding plaintiff a new trial as to all issues should be affirmed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.