## MARY E. LEVELS et al. v. ST. LOUIS & HANNIBAL RAILWAY COMPANY, Appellant.

### Division One, May 30, 1906.

1. **PLEADING: General Denial: Matters in Abatement.** A general denial is addressed to the merits of the case, and does not put in issue those facts which are raised only by a plea in abatement.

2. ————: **Answer: Amendment During Trial: Insane Plaintiff.** In a suit by parents for damages for the death of their minor daughter, the petition alleged that her father had been adjudged insane and that the public administrator had taken charge of his estate and represented him in the suit. The answer was a general denial and a plea of contributory negligence. After plaintiffs had introduced most of their evidence defendant asked leave to file an amendment to its answer denying that the father was insane or that he had been adjudged insane or that the public administrator had been lawfully authorized to take charge of his estate. *Held*, that, under the circumstances, the court wisely ruled that the amendment would not be in furtherance of justice. Such an issue should be raised by a plea in abatement, without which plaintiffs were not put to the proof of the said facts.

3. **VERDICT: Province of Jury and Court: New Trial: Preponderance of Evidence.** Where the only real issue at the trial in a suit by parents against a railroad for damages for killing their daughter was one of fact, namely, whether or not the daughter was under or over eighteen years of age, and there was substantial evidence to sustain the verdict, it is not the province of the appellate court to set that verdict aside, if there is no error in law and the trial was fair. It is the right of the jury to determine an issue of fact, as much so as it is the right of the court to say what the law is. The trial court has the power to set aside a verdict if it is against the great preponderance of the evidence, and it is often its duty to do so, but the appellate court has no such power. It can set aside a verdict, where no error of law was committed and the trial was fair, only when the record clearly shows that the verdict was the result, not of judgment, but of passion and prejudice.

4. ————: ————: **Examination of Evidence.** It is often the duty of the appellate court to examine the evidence, when it is conflicting, for the purpose of determining whether an error occurring at the trial was of a character sufficiently serious to require a reversal.

5. **EVIDENCE: Fixing Date.** In fixing a date a witness has the right to refer to a contemporaneous event or one nearly so, and the date of such event may be then proven by other witnesses or in other ways.

6. ———: **Misstating Age: Reason.** The issue was the age of deceased, and respondent's witness on cross-examination was asked if deceased was not bright enough to know her own age, and intelligent enough not to give in her age falsely to the school commissioner, and answered that she was, and that if she misstated it she did so for a purpose, and that she knew what the purpose was. Thereupon respondents' counsel asked her what was that purpose, to which defendant objected, on the ground that it was the mere opinion of the witness based on hearsay, and the court remarked that the objection "is a very ugly insinuation against a party who has testified unless it is explained," and permitted the witness to answer, who stated that the purpose was that, her parents being very hardpressed to pay a mortgage, deceased and her mother had overstated her age by two years in order that she might get a school. *Held,* that defendant's attorney did not call out this evidence on cross-examination, and being incompetent the court committed error in admitting it, as the court did also in his remarks concerning the objection.

7. ———: **Age: School Register.** A school register, kept in strict conformity to the statute by the teacher in a public school, in which are entered the names, ages and date of entrance of pupils, is competent evidence as to the age of a pupil. It is not record evidence in the strict sense of conclusiveness, but like school enumeration lists and United States census, it is competent evidence to be weighed in the balance with other evidence.

8. ———: ———: **Bible: Remarks of Counsel.** The issue in the case was the age of plaintiffs' deceased daughter, and their testimony tended to show that the ages of their children were recorded in a family Bible, and that the book was in their possession. An insurance agent, a witness for defendant, testified that when the application for an insurance policy was taken on the life of the daughter, he asked her mother the daughter's age, and that the mother consulted the Bible and stated she was born on a certain date, which, if true, made the daughter one year older than plaintiffs claim. Another witness for plaintiffs in her deposition stated that she was present when the daughter was born and when her age was recorded in the Bible, and it was in evidence that plaintiffs' attorney took a book out of his safe and asked the witness if she could identify it as the Bible, and defendant's attorney asked to see the book, but was refused. When defendant's attorney was arguing the case to the jury he alluded to the fact that plaintiffs had not offered the Bible in evidence, whereupon plaintiffs' at-

torney took a book out of his satchel and holding it up, said: "Here is the Bible; you can introduce it now to the jury." Defendant objected to the remark and asked the court to rebuke the attorney, and the abstract says the court did rebuke him, but does not state what the court said, but does say that defendant excepted. *Held*, under this state of the evidence, defendant had a right to comment on the fact that the Bible record was not offered in evidence, and not knowing what the record revealed it would have been folly for him to have accepted the challenge of plaintiffs' attorney. Under the circumstances the exhibition of the book by plaintiffs' attorney and his remarks were highly prejudicial, calculated to lead the jury to form an unfavorable judgment because defendant's counsel did not take the book and exhibit it to them, and were such errors as a mild rebuke, if any rebuke at all, could not cure.

Appeal from Audrain Circuit Court.—*Hon. H. W. Johnson*, Judge.

REVERSED AND REMANDED.

*Geo. A. Mahan, P. H. Cullen* and *J. D. Hostetter* for appellant.

(1) The trial court erred in the admission of illegal, incompetent and prejudicial testimony and documentary evidence offered on behalf of the plaintiffs during the development of their case in chief over the objections and exceptions of defendant's counsel, and erred in other respects in the following particulars, viz.: (a) In the admission of a certified copy of the order of the county court of Pike county, adjudging Powhatan B. Levels, one of the plaintiffs, to be insane, and directing him to be taken to the state lunatic asylum for treatment as a county patient. It cannot be seriously contended that a county court has authority to adjudicate, or declare a person to be insane or to disqualify him from managing his affairs or to affect his civil rights by such a judgment. (b) In the admission of the certified copy of the order of the probate court of Pike county adjudging said Levels to be insane and appointing James V. Davis, public administrator of

said county, to take charge of his estate, etc. This or-
der recites that no notice was given said Levels of such
proceedings, and that the same were had and held in his
absence. Notice to the alleged lunatic is jurisdictional,
and where the record shows affirmatively that no notice
was given, and no order made requiring his presence
at said hearing, as was the case here, the judgment is
void even in a collateral proceeding. Crow v. Meyer-
sieck, 88 Mo. 411; Dutcher v. Hill, 29 Mo. 271. (c) In
the refusal of the court to allow defendant's counsel to
amend its answer so as to specifically put in issue the
adjudication of insanity. This request to so amend
the answer was made at the time said orders of the
county court and probate court were read in evidence
and was repeated at the close of plaintiff's testimony
in chief. (d) In permitting the witness Mollie R.
Farrell to state over the objections and exceptions of
defendant that the alleged purpose of the Levels peo-
ple, in giving out incorrect and false statements as to
Hattie's age, was to enable the latter to get a school
by pretending to be older than she really was. This
information the witness claimed to have received from
Hattie herself. It was based on hearsay testimony, and
was mixed with other poisonous statements about the
poverty of the plaintiff Mary E. Levels, and about her
hard work to support the family and to pay taxes and
keep down the interest on the mortgage on the home,
and about their anxiety to have Hattie to teach school
in order to aid her mother. For these very laudable
reasons the witness concludes that Hattie formed an
intent to pretend to be two years older than she really
was. This testimony was very cunningly and artfully
pressed upon the consideration of the jury, over the
protest of defendant, and could not be regarded other-
wise than as prejudicial. (2) The trial court erred in
the exclusion of legal and competent testimony tend-
ered and offered by defendant in the following particu-

196 Sup.—39

lars: (a) In excluding the school enumeration lists. The enumeration list is an official record, which the law requires to be made and kept. It was therefore competent evidence of all matters which the statute requires that it should contain. Sec. 9770, R. S. 1899; Greenleaf on Ev. (15 Ed.), sec. 483; 2 Jones on Ev., sec. 520; 9 Am. and Eng. Ency. Law (2 Ed.), 883; Reynolds v. Ins. Co., 88 Mo. App. 679; Ohmeyer v. Sup. Forest Woodmen Circle, 91 Mo. App. 200; State v. Austin, 13 Mo. 538. (b) In excluding the daily school register kept by Prof. A. Cockfield, teacher of the Bowling Green public school while Hattie Levels was a pupil. Section 9800, Revised Statutes 1899, requires a daily register to be kept by the teacher, showing, among other things, the age of each pupil. This is an official register required by law, and was shown to have been kept by Prof. Cockfield and deposited with the school board, in whose custody it continued thereafter. This was competent evidence on all matters which the law required that it should contain, and it was error to exclude it. Greenleaf on Ev. (15 Ed.), sec. 483; 2 Jones on Ev., sec. 520; 9 Am. and Eng. Ency. Law (2 Ed.), 883; Reynolds v. Ins. Co., 88 Mo. App. 679; Shutesbury v. Hadley, 133 Mass. 242; Ohmeyer v. Sup. Forest Woodmen Circle, 91 Mo. App. 200; State v. Austin, 13 Mo. 538. (c) In not sufficiently rebuking Mr. Emerson, of counsel for plaintiff, for alleged improper and prejudicial remarks to the jury during his argument. (3) There is no substantial testimony to support the verdict. The testimony of plaintiff and her witnesses is incredible, and is absolutely overborne by strong contrary evidence of the records. It is not a question of weight of evidence; plaintiffs' showing should not be dignified as evidence; it has no probative value. If Hattie Levels was born in 1885, as contended by plaintiffs, then all the evidence shows that she was teaching school at fifteen years of age. This is against universal experience and natural conditions. She was not

mentally and physically able to teach school at that age. If so, she was extraordinary, and that has not been shown. Courts will not treat as evidence statements which cannot be truthfully made, and will interfere to prevent the unjust transfer of money or property from one party to another. Nugent v. Milling Co., 131 Mo. 241; Spohn v. Railroad, 87 Mo. 74; State v. Fannon, 158 Mo. 149; Whitsett v. Ransom, 79 Mo. 258; Hook v. Railroad, 162 Mo. 569; Spiro v. Railroad, 102 Mo. App. 250; Kelsey v. Railroad, 129 Mo. 376. Statements made by a party against his own interest must be taken as true. Erwin v. Railroad, 94 Mo. App. 297; Feary v. Railroad, 162 Mo. 105. Acts of public officials are presumed to be correct. In order to avoid the effect of an acknowledgement before a notary public, the evidence must be clear and of a decided preponderance. A bare preponderance will not suffice. Barrett v. Davis, 104 Mo. 555; Springfield, etc., Co. v. Donovan, 147 Mo. 633; Comings v. Leedy, 114 Mo. 477.

*Geo. W. Emerson* and *W. O. Gray* for respondents.

(1) The first point made by appellant's counsel in their brief is not well taken, and the authorities they cite do not support their contention. Powhatan Levels, at the time he was adjudged of unsound mind, was in the asylum at Fulton and had been for a long time. The proceedings in the probate court and the appointment of his guardian were regular and in accordance with the provisions of the statutes. R. S. 1899, secs. 3650-3654. Besides, this question can not be raised by appellant in this collateral proceeding. The person adjudged insane might properly attack the validity of such proceedings in certain cases; but the appellant has no ground of complaint. The appellant is not called upon to look after the interests of Powhatan Levels; and the judgment being in favor of said plaintiff, he is certainly not suffering any loss. McKenzie v. Donnell,

151 Mo. 431; Kiehne, Exr., v. Wessell, 53 Mo. App. 667. (2) No proper and competent testimony offered on behalf of the appellant was excluded by the trial court. Some school enumerations were excluded because they were not properly identified, or shown to have been made with the knowledge or consent of the plaintiffs, or that the plaintiffs in fact knew anything about their contents. Appellant's evidence along the lines complained of was exceedingly full. (3) Nor is there any valid ground of error in the complaint that the trial court did not sufficiently rebuke Mr. Emerson, of counsel for respondents, for alleged improper remarks to the jury. As will be seen from the record, the trial court did rebuke the counsel for alleged improper remarks in regard to the Bible, although we think that appellant's counsel was not justified in commenting on the fact that respondents had not introduced the Bible in evidence. Witnesses were present in the courtroom who testified that the date of Hattie Level's birth was put down in the Bible on the day she was born. That was the best evidence. Besides, as the record shows, appellant's counsel knew the Bible was in the possession of respondents' counsel. But conceding Mr. Emerson's remarks to be improper, the trial court did interfere, as the record shows. Such matters must of necessity lodge with the trial court; and, as has been held in appellate courts generally, the interests of public justice require that counsel should not be subjected to any unreasonable restrictions in their arguments to the jury. In the case at bar, however, the record shows that the trial court rebuked the counsel, and manifestly the verdict was not the result of any passion or prejudice on the part of the jury, but their inevitable conclusion from the plain, direct and unequivocal testimony given by respondents' witnesses on the sole issue at the trial—the date of Hattie Levels' birth. (4) The testimony of six or seven witnesses as to the date of Hattie Levels' birth, the issue on the trial, was peculiarly

unequivocal and convincing, and stood the test of rigid and full cross-examination. The question at issue was one of fact purely; and to divest the jury of the power to pass on such a case, the evidence must be in clear contradiction of some physical fact or contrary to natural laws. Hook v. Railroad, 162 Mo. 569. It is the peculiar province of the jury to determine the credibility of the witnesses and the probative force of their testimony. Temple v. Railroad, 83 Mo. App. 64. An examination of the record will clearly show an abundance of substantial evidence to justify the verdict; and in such cases the appellate courts will not set aside the finding of the jury in a law case. Plow Co. v. Sullivan, 158 Mo. 440; Blanton v. Dold, 109 Mo. 64. Where the evidence produced by plaintiff is sufficient to make out a prima facie case, the appellate court will not interfere with the verdict on a question of fact. Carter v. Railroad, 156 Mo. 635; Liese v. Meyer, 143 Mo. 547; Steube v. Christopher & Simpson, etc., Co., 85 Mo. App. 640; Cicero v. Meixner, 160 Ill. 320; James v. Life Assn., 148 Mo. 1.

VALLIANT, J.—Plaintiffs sue under section 2864, Revised Statutes 1899, to recover damages for the death of their daughter, Hattie Levels, who, they say, was a minor at the time of her death and lost her life while a passenger in defendant's car through negligent defect in the equipment.

The petition states that plaintiff Powhatan Levels, the father of the deceased Hattie, had been adjudged insane by the probate court and that the public administrator has taken charge of his estate and represents him in this suit. The answer was a general denial and a plea of contributory negligence. During the trial, after the plaintiffs had introduced the most of their evidence, the defendant asked leave to file an amendment to its answer denying that Powhatan was insane or that he had been adjudged insane or that the Public Administrator had been lawfully authorized to take

charge of his estate. On objection of the plaintiffs, the court refused to allow the amendment, for the reason, as stated by the court, that it would not be in furtherance of justice. That ruling is assigned as error.

I. The ruling of the court in that respect was right. If the defendant intended to deny the capacity in which the plaintiff sued, it should have made a specific denial of the allegations of the petition in that respect in the nature of a plea in abatement. The general denial is addressed to the merits of the case and does not put in issue those facts which are raised only by a plea in abatement. Plaintiffs were not put to the proof of those facts to maintain their case as the pleadings stood when the trial began and the trial court wisely ruled that it would not further the ends of justice under the circumstances of the case to allow the issue to be raised after the trial had progressed.

II. The main pivot on which the case turned was the age of plaintiffs' deceased daughter; if she were a minor, the plaintiffs were entitled to recover, if she was eighteen years of age, the plaintiffs could not recover. The plaintiffs' testimony tended to prove that her age was seventeen years and ten days; defendant's, that it was nineteen years and ten days. The jury found for the plaintiffs and a judgment for $5,000 in their favor was rendered, from which defendant appealed.

Appellant in its brief concedes that the deceased was a passenger and lost her life through the negligence of the carrier and that defendant is liable if, in a fair trial, it is found that the deceased was under eighteen years of age at the time of her death.

The general character of the plaintiffs' testimony was that of witnesses who remembered the occasion of the birth of Hattie and undertook to fix the date in reference to some collateral event that was of sufficient importance to fix it on the mind of the witness; for in-

stance, one witness who was present at the birth re-
membered that it was about one month after the birth
of her own child whose age was recorded and well re-
membered; another remembered that she stopped at
the plaintiffs' home on that occasion when she was on
her way to see her grandmother who was ill and who
died shortly afterwards and the date of whose death
was proven; other witnesses remembered the occasion
in connection with the time a man was hanged for
murder, the date of the execution being shown by the
court records. The plaintiffs' evidence also tended to
show that the Levels kept a family Bible in which the
ages of their children were recorded and that Hattie's
age was there recorded; this Bible was shown to be in
the custody of the plaintiffs, but was not introduced in
evidence. One of the plaintiffs, the mother of Hattie, tes-
tified that she and her husband were married in Septem-
ber, 1882; that they had three children, Hattie the eld-
est, born in July, 1885, Blanche the second, born June,
1887, and William in 1889. The testimony on the part
of the defendant was derived chiefly from the records
of the school enumerations, the United States census
enumeration and Hattie's school record. These enum-
erations showed that Hattie was born in July, 1883,
Blanche, June, 1885, and William in 1887.

Defendant also introduced testimony of the same
character as that of plaintiffs; for example, one wit-
ness for defendant testified that in the summer of
1884 she called at the house of plaintiff on a matter of
business early in the morning and found the family
seated at the breakfast table, their child sitting in a
baby's high chair to the table; some conversation en-
sued between the mother and the visitor about the child,
and in the same conversation mention was made of the
death of the witness's mother which had recently occur-
red, the date of which was August 29, 1884. The de-
fendant's testimony tended to show that Hattie was a
teacher in the public schools; she received her first cer-

tificate as a school teacher in August, 1900, just two years before her death; if she was born in August, 1885, as the plaintiffs claim, she was only fifteen years old when she became a teacher in the public school. The school commissioner who issued the certificate testified that he knew nothing of her age when he issued it except as he judged by her appearance, and so judging it he would say she was at that date, August, 1900, eighteen years old. In November, 1901, she applied for an advanced certificate, and was again examined by the then school commissioner, who testified that she then told him that she was nineteen years old, and he made a memorandum of the fact at the time, which memorandum was on the stub in the book from which the certificate was taken. There was also in evidence an application for a life insurance policy signed by Hattie, for insurance on her own life in favor of her mother, dated July 3, 1899, in which she stated that she was born July 24, 1883; and there was proof of her death made to collect the insurance, which was signed by the plaintiff Hattie's mother in which she stated that Hattie's birth was July 24, 1883. The insurance agent who took that proof testified that he wrote the date of the birth at the dictation of Mrs. Levels who, before answering his questions as to the date, examined some book which to the witness looked like a Testament and then gave the date and he wrote it as she gave it, and she collected the money. That proof of death was dated August 6, 1902, three days after the death. This suit was filed January 24, 1903.

Our purpose in thus stating the general character of this evidence is not to weigh it to see if the jury's estimate of it was correct, because an appellate court has no right to do that; the same authority that gives the court the right to say what the law is, gives the jury the right to say what the facts are, and the court

has no more right to set at naught the jury's finding of the facts than the jury has to disregard the court's declaration of the law. To relieve against a flagrant wrong that might be committed, the law has wisely given the trial court the power and imposed on it the duty of setting aside a verdict if it is against the great preponderance of the evidence and it is often a cause for regret that trial courts are not as apt to exercise that power or perform that duty as they should be, but even then when the case comes to an appellate court, whatever opinion may be had of the fairness of the verdict, if there is substantial evidence to sustain it, the appellate court violates the law if it undertakes to substitute its judgment for that of the jury or to perform a duty that the law has imposed on the trial judge alone, · and which it may be feared he has neglected to perform. It is only when the record clearly shows that the verdict was the result, not of judgment, but of prejudice or passion, that the law gives the appellate court the right to set it aside when there is no error in law.  An appellate court in its anxiety to do justice is sometimes strongly tempted to correct what to it seems· to be a verdict against the weight of the evidence, and thus invade the province of the trial judge, but even that motive will not justify the invasion or make it any less unlawful.  And, in the long run and general average, justice will be found to be best promoted by leaving the responsibility for injustice in a particular case just where the law has placed it.

But it not infrequently happens that the duty of examining the evidence when it is conflicting devolves on the appellate court for the purpose of deciding whether an error occurring in the trial was of a character sufficiently serious to require a reversal of the judgment.  Section 865, Revised Statutes 1899, forbids an appellate court to reverse a judgment unless it believes that error was committed in the trial court against appellant "and materially affecting the merits

of the action.'' Sometimes, therefore, a judgment is affirmed although illegal testimony has been received or other error committed, if, upon the whole record, it is absolutely clear that the judgment is for the right party and that the error could not have affected the result of the trial. But when the case turns on a question of fact and the evidence is so conflicting that a verdict for either side can be said to have substantial evidence to support it, then the introduction of illegal evidence is a matter of more consequence than it would be in a case where the evidence in support of the verdict was substantially all one way.

Plaintiffs cannot claim for the evidence in support of this verdict that it amounts to anything more than what could be called substantial. The plaintiffs' witnesses when testifying were drawing on their memories for facts that occurred eighteen or twenty years before; they seem to have had a vivid recollection of the birth of a child to Mrs. Levels and they fixed the date by collateral events concerning which they were not likely to be mistaken. But the fact being that Mrs. Levels had a second daughter, Blanche, born in June, 1885, was a fact to be considered. It was not impossible for these witnesses trying to recall what occurred at that distant day, to have mistaken the occasion of the birth of the second for that of the first child and to have associated it with the collateral event mentioned; if, therefore, the verdict had been for the defendant it would not necessarily have been a reflection on the veracity of the plaintiffs' witness.

Giving to the plaintiffs the full benefit of what they claim for their evidence, that is, that it was substantial, it cannot be said to be overwhelming in its probative force; therefore, defendant has the right to ask this court to scrutinize the evidence admitted over its objection.

1. Over the objection of defendant, plaintiffs read in evidence the depositions of Strother, circuit clerk,

and Mayhall, editor of a newspaper, to show the dates of the indictment, conviction, appeal, reversal, retrial, second conviction, appeal, affirmance and final. execution of Collins, the date of whose execution was the collateral fact by which some of the witnesses fixed the date of Hattie's birth. Those were all matters of record which could have been shown by the record, if true, and if the objection to the depositions had been put on the ground that they were at best only secondary evidence, the court should have sustained the objection, but it was not put on that ground, but on the ground that the depositions related to matters foreign to the issues. In fixing a date a witness has the right to refer to an event co-temporaneous or nearly so with the date in question and the date of such event may be then proven. The court did not err in overruling the objection on the ground on which it was made.

2. On cross-examination of Mrs. Farrell, who was one of plaintiffs' principal witnesses, she was asked if Hattie was not a bright girl and knew her own age, to which the witness answered yes; she was then asked: "And she was intelligent enough not to give in her age falsely or erroneously? A. Well she may not have regarded that just as we do. Yes, sir, she may have yarned about it. Yes, sir, if she gave her age incorrectly I would think she simply yarned and had a purpose in telling an untruth about it. Mary Levels. I think is intelligent enough and ought to have known Hattie's age. If she gave her age incorrectly I would think she had a purpose. I think I knew the purpose."

On re-direct examination witness was asked by plaintiffs' attorney: "What was the reason, state what the purpose was in making her age more than it was?" Defendant objected to the question on the ground that it was the mere opinion of the witness based on hearsay evidence, the objection was overruled and exception taken; in overruling the objection the court made this comment: "It is a very ugly insinuation

against a party who has testified unless it is explained; she may explain.'' Defendant excepted also to the comment. The witness then answered: ''Well, as you know her mother had to work very hard to support her family for the last few years, say from, well 1894 or 1895, I think; she was supporting the family while her husband was supposed to be paying the taxes on the property and keeping down the interest on the mortgage that was on their home, and they were very anxious to have this girl teach school, and in order to be able to get a school she puts herself up two years, or at least that was her intention, and I know it. Q. From whom did you get that information? A. From Hattie herself.''

The only ground on which plaintiffs' attorney claimed that this testimony was competent was that the defendant had called it out in the cross-examination. But that is a mistake; the defendant only asked if Hattie was a bright girl and had sense enough to know her own age and know when she was telling an untruth about it; the witness volunteered to say that Hattie and her mother had a motive for telling an untruth and that she knew the motive. That was not responsive to any question asked by the defendant.

The testimony was incompetent and hurtful to the defendant; it was a direct appeal to the sympathy of the jury, and offered what was evidently intended to be a praiseworthy excuse for telling a falsehood; it was but the witness's opinion founded on hearsay. The court's comment was unjustifiable, the question asked by defendant on cross-examination did not deserve the rebuke of saying that it contained ''a very ugly insinuation against a party who had testified.'' Defendant had a right to show that the false statement as to age could not be attributed to lack of intelligence on the part of Hattie or her mother, and that is as far as defend-

ant's questions went. It was error to admit that testimony.

3. Some of the school enumeration lists offered were admitted in evidence and some excluded on plaintiffs' objections. Appellant assigns the exclusion of these as error.

All of the school enumeration lists that were shown to have been made in conformity to the statute were admitted, but some were not just what the law required; for example, the enumerator testified that in 1900 he called in person on Mrs. Levels and asked her the ages of her children and recorded them as she gave them; that list was admitted in evidence; but in 1901 and 1902 the enumerator made up the lists as to the plaintiffs' children without calling on the parents, simply putting them forward in ages one and two years. Other lists had other irregularities. Neither of those excluded lists was competent evidence in itself of what it purported to show, but when the defendant undertook to show by the school enumeration lists the age of the deceased the duty devolved on it to produce all of the lists attainable; if it had selected one or two lists that were favorable to its defense and failed to produce the others, the plaintiffs would have had a right in their argument to the jury to call attention to that omission and to ask why the defendant selected such lists as suited its purpose and withheld the rest, was it because the absent lists showed that the errors in those produced had been corrected? That would have been a legitimate argument and a legitimate inference to the prejudice of defendant could have been drawn. Therefore the duty devolved on the defendant to offer those lists in evidence to show that they did not contradict the lists that were regular. But the court's ruling on the question was correct, because when the defendant offered them it did its whole duty in regard to them and the plaintiffs by objecting to them were disarmed of that argument.

4. Section 9800, Revised Statutes 1899, is as fol-
lows: "It shall be the duty of every teacher employed
in any of the public schools of the state to keep a daily
register, in which names, ages and dates of entrance of
the pupils shall be entered, and the studies pursued by
the same; the date of each visitation by the directors or
other school officers; which register shall be open to
the inspection of the public at all times."

A register as required by that statute was kept by
the teacher of the school which Hattie attended for the
term begining September 4, 1899, and that register
shows that her first day's attendance was November 6,
1899, and her age then seventeen years. De-
fendant offered that register in evidence and
it was excluded on objection of plaintiffs. The
court erred in excluding the evidence; the register
was a record which the law required to be kept and the
evidence showed that it was kept in strict conformity
to the requirement of the law. It was not record evi-
dence in the strict sense of conclusiveness, but like the
school enumeration lists and the United States census
lists, it was competent evidence to be weighed in the
balance with other evidence. [State v. Austin, 113 Mo.
538; Van Riper v. Morton, 61 Mo. App. 440; Reynolds
v. Ins. Co., 88 Mo. App. 679; Ohmeyer v. Woodmen, 91
Mo. App. 189, l. c. 201; 1 Greenleaf on Ev. (16 Ed.),
sec. 483; 9 Am. and Eng. Ency. Law (2 Ed.), 883.]

5. When the cause was being argued before the
jury the attorney for defendant alluded to the fact that
the plaintiffs had failed to offer in evidence the Bible
in which they claimed that the ages of their children
were recorded, whereupon the attorney for the plain-
tiffs took a book out of a satchel he had and holding it
up in the presence of the jury said: "Here is the Bible,
you can introduce it now to the jury." Defendant ob-
jected to the remark and requested the court to rebuke
the attorney for it. The abstract says that the court
did rebuke the counsel, but it also says that the defend-

ant excepted. What the court did say is not stated. In the brief for respondents it is said that the court rebuked the counsel; in the brief for appellant it is said that the court did not sufficiently rebuke him. Just how far the effect of an improper remark by counsel is cured by a rebuke from court depends on the circumstances of the case. In order to appreciate the effect of this remark we should notice the evidence in relation to this Bible. The testimony on the part of the plaintiffs tended to show that the ages of their children were recorded in the family Bible and that that Bible was in the custody of plaintiffs. The insurance agent, a witness for defendant, testified that when the application for the insurance on the life of Hattie was made he went to the plaintiffs' house and wrote the answers to the questions in the application from what Mrs. Levels told him; when he asked Hattie's age, Mrs. Levels consulted a Bible, and then stated that Hattie was born July 24, 1883, and the witness so wrote it.

It also was in evidence that in the taking of the deposition of Mrs. Farrell (who was one of the witnesses for plaintiff who testified that she was present when Hattie was born and when her age was recorded in the Bible) the attorney for the plaintiffs took a book out of his safe and showed it to her and asked her if she could identify it as the Bible in which she had seen the age recorded and that the attorney for defendant who was present asked to see the book; the attorney for plaintiffs refused the request and returned it to his safe.

Under that state of the evidence the attorney for the defendant had the right to comment on the fact that the plaintiffs had failed to offer the supposed family record in the Bible in evidence and the action of the plaintiffs' attorney in then showing a book and making the remark he did was unjustifiable and prejudicial to defendant. Of course the defendant's at-

torney would not then venture to put the record in evidence because he had no knowledge of its contents. If he suspected that it had been altered or concocted for the occasion, he knew that he would be unable to grapple with it then. No attorney in his place would have ventured then to exhibit the book to the jury. The counsel understood the situation but the jury did not, and the jury were allowed to draw an inference unfavorable to the defendant from the fact that the book was not given in evidence and it was of such a serious character that the impression once drawn was not likely to be removed by a mild rebuke, if by any rebuke at all. For that cause alone the trial court would have been justified in granting a new trial.

For the errors above mentioned the judgment is reversed and the cause remanded to be retried according to the law as herein expressed.

All concur, except *Graves, J.,* not sitting.