James RYAN, Respondent,

v.

CAMPBELL "66" EXPRESS, Inc., a Corporation, Appellant.

No. 45656.

Supreme Court of Missouri,
En Banc.

Sept. 9, 1957.

F. X. Cleary, C. M. Kirkham, Moser,. Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, for appellant.

William H. Becker, Robert C. Smith, Jr.,. Columbia, Roberts P. Elam, St. Louis, Clark & Becker, Columbia, Elam & Casey,. St. Louis, of counsel, for respondent.

EAGER, Judge.

This is a suit for personal injuries sustained in a collision between a panel truck operated by plaintiff, and a tractor-trailer operated for defendant. The prayer of the petition was for $75,000. Plaintiff sustained serious injuries, but it will be unnecessary to discuss them here. The accident occurred on Highway 54 about a mile south of Mexico, Missouri, on July 1, 1952. Plaintiff was working as a route man for a linen supply company of Columbia, Missouri. The petition charged primary negligence in several respects, but the sole controversy actually tried and submitted was whether defendant's tractor-trailer or plaintiff's truck caused the collision by crossing the center line of the highway. The collision itself established the fact that one or the other did so. Plaintiff was going south, and the tractor-trailer north; the highway was straight at the point of collision. A second and a third count of the petition, each charging malicious prosecution of civil proceedings, were dismissed at the trial, and are not involved here; a counterclaim for damage to the trailer was dismissed without prejudice at the close of the evidence.

The jury returned a nine-man verdict for defendant. The court sustained plaintiff's motion for new trial on three grounds assigned in the motion, and also assigned five additional grounds "of its own motion." Defendant has appealed from that order. The grounds thus assigned for sustaining the motion are lengthy and somewhat complicated. We shall not set them out verbatim. In substance, they are all based on supposed misconduct of defendant's trial counsel, and more specifically that: (a) counsel persistently asked for conclusions and opinions from the two highway patrolmen who testified, and, by repeated references to the patrol report, gave the jury the impression that it was unfavorable to plaintiff, and that thereby counsel violated the rulings of the court; (b) counsel persisted in displaying, explaining, and asking questions concerning a photograph of the highway on which a highway patrolman had punched a hole to locate the supposed point of impact, which exhibit the court had ruled inadmissible; (c) counsel persistently asked for opinions and conclusions of witnesses, therein failing to comply with the rulings of the court, and thus forced plaintiff's counsel to make numerous objections, and created unfavorable inferences; (d) counsel made "long and emphatic complaint" to the court in the presence of the jury of supposed remarks and gestures of plaintiff's counsel, which was not justified; (e) counsel acted "amazed and shocked" at certain rulings of the court; and (f) these matters, actions and occurrences "injected false issues into the case."

■ These assigned grounds have necessitated a minute examination of the record, and will require a somewhat tedious recital here. The numerous cases cited pro and con are applicable only to establish the recognized principles upon which we must proceed. None is specifically in point on these particular facts; and, of course, every case of this character depends solely upon its own facts and record. A trial court is necessarily allowed considerable discretion in declaring a mistrial or in granting a new trial on matters which concern issues of fact. Bailey v. Interstate Airmotive, Inc., 358 Mo. 1121, 219 S.W. 2d 333, 8 A.L.R.2d 710. And, therein, the trial court is vested with a wide discretion in determining whether, in view of the action already taken, the conduct or ruling was prejudicial and substantially influenced the verdict. Stutte v. Brodtrick, Mo., 259 S.W. 2d 820; State ex rel. and to Use of Donelon v. Deuser, 345 Mo. 628, 134 S.W.2d 132; Gettys v. American Car & Foundry Co., 322 Mo. 787, 16 S.W.2d 85, 89; Welch v. McNeely, Mo., 269 S.W.2d 871; Buzan v. Kansas City Railways Co., Mo.App., 212 S.W. 905; Cox v. Wrinkle, Mo., 267 S.W.2d 648; Cornwell v. Highway Motor Freight Line, 348 Mo. 19, 152 S.W.2d 10. Sec. 510.370, RSMo., V.A.M.S., expressly provides that the trial court may within 30 days, order a new trial of its own motion, specifying the grounds. The present order was made within 30 days after the verdict and judgment. This section is not so much a grant of a power as it is a limitation, for the courts had the same power during the term under our former practice. Schipper v. Brashear Truck Co., Mo., 132 S.W.2d 993, 125 A.L.R. 674.

■ We are confronted here with two fundamental questions. First, was there any misconduct? Secondly, if there was such, was it prejudicial, considered singly or collectively? And, in determining each of these questions, we may not ignore the discretionary powers of the trial court, and we may reverse only if we consider that such discretion has been abused. Moll v. Pollack, 319 Mo. 744, 8 S.W.2d 38. A statement of facts in the usual sense is not necessary here. We shall refer to sundry trial incidents in the course of this opinion. It would be wholly impossible to discuss all the instances and places in the record which respondent's counsel have listed as establishing some impropriety or misconduct. We shall discuss those phases which seem to have some possible materiality.

We shall first consider assigned ground (a) supra. Highway patrolmen Cameron and Dix testified, the first for plaintiff, and the latter for defendant; their testimony covered generally their respective observations at the scene of the collision, including the positions and conditions of the vehicles, the location of debris and parts of the panel truck, tire marks, and (from Dix) the presence of a long scratch mark on the highway in the shape of an arc. After Trooper Cameron had testified that Trooper Dix made a report of the accident and that he had since seen it, counsel for defendant asked again if he had seen the "record" since the accident, to which question an objection was sustained; counsel read (over objection) from Cameron's deposition questions and answers which again referred to the accident report; later counsel asked whether the tractor-trailer was described in the report, but an objection was sustained; still later, counsel asked again whether he had seen a "record" made by either, since the time of the accident, and objection was sustained; subsequently, counsel asked again whether Dix "made out a report" but on objection, withdrew the question, and the court instructed the jury to disregard it; immediately, however, counsel asked if he, Cameron, had made out any report, which question was answered in the negative. Trooper Dix testified that he made a report and mailed it to headquarters, and that he had since seen a copy; he was then asked "how many times" he had seen it and counsel for plaintiff objected that the witness could tell the facts personally, but that questions concerning the report were immaterial and were "leading to inadmissible matter."

This objection was sustained. However, counsel asked further, and immediately, whether the reports were available to interested parties and whether such a report was a public record. The witness later referred to his report for the name of defendant's driver. Counsel for defendant also asked Trooper Cameron if the curve just south of the scene of the accident was "con-sidered practically the same as a straight highway," so far as "markings" were concerned, to which question an objection was sustained as calling for a conclusion. There were questions and answers concerning some dual tire marks observed by both patrolmen, and objections were sustained to some of these questions as calling for conclusions. An objection was also sustained to a question asking Dix whether a long arc-shaped scratch which he had observed in the concrete was made by "wood or stone or metal."

■■ The patrol report was not offered in evidence, and certainly any conclusions or opinions in it as to the point of impact would not have been admissible. Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242; Pulse v. Jones, Mo., 218 S.W.2d 553; Welch v. McNeely, Mo., 269 S.W.2d 871, 879; 20 Am.Jur., Evidence, § 1027; 32 C.J.S. Evidence §§ 626, 637. The Uniform Business Records Act, §§ 490.660–490.690, RSMo., V.A.M.S., eliminates the hearsay objection when such a record is properly qualified thereunder, but it does not make admissible any evidence which would be incompetent if offered in person. Allen v. St. Louis Public Service Co., Mo., 285 S.W.2d 663. Respondent submits that the persistent asking of improper questions, or offering of improper evidence, or display of something not in evidence, constitutes misconduct sufficient for the granting a new trial. 109 A.L.R. 1089, Note; 53 Am.Jur., Trial, § 559, p. 360; 37 A.L.R.2d 662; Maurizi v. Western Coal & Mining Co., 321 Mo. 378, 11 S.W.2d 268; McClendon v. Bank of Advance, 188 Mo.App. 417, 174 S.W. 203; Levels v. St. Louis & H. R. Co., 196 Mo. 606, 94 S.W. 275. In certain cases this is true, and the theory is that such acts constitute a willful attempt to present improper matters to the jury, or to create significant and improper inferences, or to force one's opponent to be placed in the light of suppressing facts by his objections. In each such case the final question is whether the conduct substantially influenced the verdict, despite the action taken at the time by the

court, in sustaining objections or otherwise. If every case in which improper questions were asked was reversed, few verdicts would stand. Hollenbeck v. Missouri Pacific Railroad Company, 141 Mo. 97, 106, 38 S.W. 723, 41 S.W. 887. Here it was legitimate to show that there was a patrol report and that these witnesses had seen it, or a copy, in order to refresh their recollections. We think it was also proper to show a duty to make a report, for from this some inference of close observation might reasonably be drawn. It would be improper to attempt to create inferences of the substance of any opinions or conclusions contained in the report. While we are told in the brief that Trooper Dix expressed the opinion in this report (by words or diagram) that the impact occurred east of the center line of the highway, on the tractor-trailer's side, it is at least very doubtful whether the above trial incidents could reasonably be said to have created an inference to that effect in the jury's minds. While there was some undue repetition in the various references to the patrol report, we do not think that the foregoing, standing alone, constituted sufficient misconduct to support the granting of a new trial, even in view of the discretion permitted the trial court; however, these incidents may properly be considered together with the point next discussed.

■ We next consider assigned ground (b) supra. Trooper Dix's deposition had been taken by defendant; at that time he was shown a photograph of the highway at the location in question, looking north, and showing a gravel road running east from the highway. The witnesses testified that the collision occurred a little north of this intersecting gravel road, and the precise distance would not seem too material. The picture also showed that at the point of collision the road was slightly uphill as one proceeded south, as plaintiff was doing. At this deposition counsel for defendant asked Trooper Dix to mark the place on the road where the collision occurred, but "not with respect to the center line." The witness marked the supposed location by punching a small hole in the photograph, north of the gravel road, and just east of the center line. At the beginning of the trial, counsel for plaintiff asked that the court rule the highway patrol report inadmissible, and that it admonish counsel that he should not ask the troopers for conclusions concerning the manner in which the accident occurred, they not having been present; in this connection he also called the court's attention to the depositions of the troopers. No ruling appears at that time, but there was an "off-the-record" discussion. The picture which had been so marked (or punched) at the deposition was marked Defendant's Ex. 1 at the trial, and it is here as an original exhibit. It was taken some months after the accident. During plaintiff's case this photograph was discussed by court and counsel outside the presence of the jury, and counsel for defendant explained that the hole represented merely the north and south location of the collision, but not "where it occurred with relation to the center line." The exhibit was then offered by defendant's counsel; it was objected to (out of the presence of the jury) as not taken at or near the time of the accident, as showing "skid and track marks" made months later, and as bearing the hole or designation which the trooper had placed there, he not being competent to fix the point of impact. The court ruled that the exhibit had not then been sufficiently identified, but proceeded to let counsel identify it, generally, by the plaintiff as showing the roadway; however, it was not re-offered until later in the trial. Counsel for defendant showed this exhibit to both of the troopers; when it was shown to the first one, counsel for plaintiff objected on the ground that it was not in evidence, and that it contained "marks"; the court cautioned all counsel not to show it to the jury. This witness (Cameron) identified it as showing the topography of the highway, but knew nothing about the "marks" on it. Trooper Dix was asked if he recalled being asked at his deposition to mark on this picture the point of collision, but "without

reference to the center line," and he was specifically asked if he made the perforation. An objection to the latter question as leading was sustained. Next he was asked to point out on the picture where the collision occurred. That question was objected to as invading the province of the jury and as contrary to the rulings of the court. The objection was sustained, the court remarking that the witness was not present at the accident. The witness was then asked to point out in the picture where he found the panel truck. An objection to this was sustained. The exhibit was then re-offered —and objected to. The objection was sustained for the reason that "marks and perforations" had been made on the picture. The propriety of this ruling is not in question on this appeal, nor is the propriety of other specific rulings. On re-direct examination counsel for defendant again reverted to this picture and brought out the fact that it correctly showed the roadway, shoulders and side road as of the time of the accident. He then re-offered the exhibit explaining "that the scratch marks have no connection with this accident." The court rejected the offer out of the presence of the jury, stating that counsel for defendant had violated the court's instructions that he should not ask the troopers where the accident happened, and stating further that the picture had been defaced. Counsel explained that as he understood the admonition, he was not to ask on which side of the center line the collision occurred, and that he had merely inquired about the north and south location of the point. At this juncture counsel made an offer of proof, and examined Trooper Dix concerning the perforation in the picture, outside the presence of the jury. The court remarked that Dix could testify in person to any facts which he knew. The offer was denied and the exhibit rejected. Eventually, counsel offered and the court received Defendant's Ex. 5, which appears to be an exact duplicate of Defendant's Ex. 1, except for the perforation. An admission was made that certain oil marks and skid marks on the road in Defendant's Ex. 5 had no connection with the accident.

The trial court has, by its ruling, found that the foregoing proceedings constituted misconduct on the part of defendant's counsel, and that it was prejudicial. After much consideration, we are unable to say that in so doing, it abused the discretion permitted to it. Were we passing on the matter as an original proposition, we would have an entirely different question. It is true that defendant's counsel stated that the hole made in the picture was merely meant to show the north and south location of the point of impact; but, conceivably, if the jury could see the mark or deduce from the colloquies where it was on the picture, these incidents might have given the jury the impression that Trooper Dix had placed the impact at a point unfavorable to plaintiff, that is, on the east of the center line. And we cannot say, with confidence, that such an inference might not have been imparted from the fact that defendant's counsel was pressing the matter as he did. Actually, it would seem that there was little legitimate reason for using that particular picture when various witnesses could and did tell approximately where, north and south, the accident occurred, and the duplicate photograph showed the roadway equally well. On this ground, with some little assistance from the misconduct charged under point (a) supra, we hold that the order granting a new trial should be affirmed.

We find nothing sufficiently material or prejudicial to constitute misconduct in other questions asked of witnesses, and assertedly calling for opinions and conclusions, except as related under (a) and (b) above. The ruling on ground (c), assigned by respondent in his motion, will not be sustained as an independent reason for the order, even allowing the full range of discretion; perhaps it was not really intended as such.

The "long and emphatic complaint" made of supposed remarks and gestures of plain-

tiff's counsel (ground (d) supra) is stated in the order to have been made in the presence of the jury; the record here shows that it was made out of the hearing of the jury. In any event, it seems to have been such a complaint and motion for discharge as any vigorous and able lawyer might make in a hotly contested case. On the record we cannot and do not sustain this finding of misconduct. The last ground of the ruling (omitting the summation that "false issues" were injected) was that counsel was guilty of misconduct in acting "amazed and shocked" at the court's rulings "in keeping with his own previous agreement." There is nothing in the record to indicate any such conduct and no admonition or criticism on the subject at any point during the trial. It would certainly be preferable to make some record showing of such conduct, if it be sufficiently serious to justify the stern action taken later. However, the trial court saw counsel throughout the trial and we did not; this finding concerns a question of fact, and we cannot say that it constitutes an abuse of discretion. As to the points not herein sustained, we do hold that the granting of a new trial thereon was an abuse of discretion. This, however, is more or less immaterial in view of our ruling on the other phases of the case. Much is said in the case of Schipper v. Brashear Truck Co., Mo., 132 S.W.2d 993, 125 A.L.R. 674, which is applicable in principle to the present situation.

In view of all the "misconduct" now charged by court and counsel it would have been much preferable for the trial court to have declared a mistrial of its own motion, when these things occurred, rather than to do so retroactively; and, likewise, much better for respondent's counsel to have then moved for a mistrial instead of speculating on a favorable verdict. The court has said in its order that it was "reluctant to declare a mistrial" because of the long time which had elapsed since the accident. No time has been saved by the present procedure. There was certainly no aggravated misconduct here. We are affirming the ruling because we feel that the trial court had and has the right, based on the conduct specified, and in the exercise of a duty to see that justice is done, to find that plaintiff was deprived of a fair trial. It has so found.

It is wholly unnecessary to consider the additional and unassigned grounds now urged by respondent as supporting the order granting the new trial. These concern the admission of evidence, failure to strike out evidence, and supposedly prejudicial argument. In view of the prospect of a retrial we may say that we are not persuaded that any of these grounds would have been sufficient on this particular record. The trial court did not assign any of these as a discretionary ground for its order.

The order granting a new trial will be affirmed. It is so ordered.

All concur.