**DORAN DEVELOPMENT CORPORATION**
et al., Appellants,

v.

**The STATE of Texas, Appellee.**

No. 180.

Court of Civil Appeals of Texas.

Tyler.

Dec. 9, 1965.

Rehearing Denied Jan. 6, 1966.

Wayne O. Woodruff, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellants.

Waggoner Carr, Atty. Gen., Robert D. McGee, Asst. Atty. Gen., Austin, for appellee.

MOORE, Justice.

This is a condemnation suit filed by the State of Texas, plaintiff, against Doran Development Corporation, Central Forwarding, Inc., and Truitt Packing & Export Company, to acquire fee simple title to land owned by defendant, Doran Development Corporation, for highway purposes. Defendant, Central Forwarding, Inc., filed its disclaimer of any interest in the controversy and therefore did not participate in this appeal. Defendant, Truitt Packing & Export Company, similarly had no interest in the controversy and is not a party to this appeal. Prior to trial Doran Development Corporation stipulated that all procedural requirements had been met and that the sole question in controversy was the determination of the amount of damages sustained by the defendant, Doran Development Corporation. Following a jury trial and verdict, the trial court entered judgment granting plaintiff, the State

of Texas, fee simple title to the right-of-way and fixed the damages of Doran Development Corporation, from which judgment Doran has perfected this appeal.

The parties will hereinafter be designated as condemnor and condemnee.

The jury found that the market value of the land taken for highway purposes at the time of the taking was $20,488.50, but further found that the remaining land and improvements were not decreased in value by reason of the taking and hence condemnee had suffered no damage to the remaining premises.

Condemnee makes no complaint of the amount of damages awarded on the part taken. The contested issue in the trial court involved the question of whether or not the remaining property and improvements were damaged. It was condemnee's contention in the court below that the taking of the land on the south end of the building precluded usage of the south side of the property for truck passage, loading and unloading due to the proximity of the fenced right-of-way on the south side of the warehouse, and that by reason thereof the remaining property had been materially damaged.

A brief review of the evidence shows that the property sought to be condemned was a 14,130 square foot triangular piece of land off the south end of a tract containing 104,288 square feet which was located in the central business district of the City of Dallas. There were no improvements on this triangular strip of land. The remainder of the property was improved with a masonry building covering approximately 52,000 square feet and was being used as a warehouse. The building had railroad trackage on the east side where five loading doors were located. Loading docks were situated on the north end of the building where large trucks were loaded with freight. There were two loading doors situated on the south end of the building which was adjacent to the land condemned. The building was constructed in a rec-

tangular shape except the south wall which was constructed at an odd angle. The south wall was so constructed that it was located approximately twelve feet from and exactly parallel with the new highway right-of-way line of the proposed new highway.

The building was constructed in 1953 and was leased to Central Forwarding, Inc. in 1954 for a period of ten years at a rental of $2,600.00 per month. The written lease agreement describes the south line of the property as follows:

" * * * in a northeasterly direction along the proposed right-of-way line of the east-west expressway, a distance of 218 feet to the right-of-way line of the Southern Pacific Railway track."

The state took possession of the premises on March 27, 1962. Central Forwarding, Inc. continued to occupy the building until three or four years prior to the expiration of the term of the lease, at which time they built a new building and moved to a new location. Thereafter, the building remained vacant for a period of time; however, Central Forwarding, Inc. continued to pay the rent in accordance with the lease agreement. Upon the expiration of this lease, condemnee, Doran Development Corporation, leased the property to Exchange Warehouses, Inc. for a period of five years at the same monthly rental of $2,600.00 a month. The description of the leased premises in the two leases was identical.

It is without dispute that after the taking of the triangular strip on the south end of the building, there was insufficient space between the wall of the warehouse and the right-of-way line for any type of vehicular traffic other than a pickup truck or an automobile to pass through in order to get to the south loading doors.

Condemnee, Doran Development Corporation, seeks a reversal of the judgment and has assigned three Points of Error. The first point asserts that the trial court erred in refusing to grant the condemnee a mis-

trial or to allow it to withdraw its announcement of ready after the attorney for the condemnor had asserted in the presence of the jury that the lessee, Central Forwarding, Inc., was not claiming any damages and that the lessee was the party actually damaged, if anybody was, thus implying that the landowner had not been damaged.

The controversy developed in this manner. Condemnee had elicited testimony from one of its witnesses showing that Central Forwarding, Inc. had moved from the property before its lease was up because "they could not live with the setup that was going to be in here." The witness further stated that the premises remained vacant for quite some time even though Central Forwarding, Inc. had attempted to lease the same. This testimony obviously left the inference with the jury that condemnee, Doran Development Corporation, was damaged because of the fact that its lessee had vacated the premises as a result of the location of the new highway. On cross examination, however, he admitted that Central Forwarding, Inc. had continued to pay the monthly rental after they had moved to the new location. Thereupon, the attorney for the condemnor in an effort to destroy the inference propounded this question:

"Q Isn't it, then, if anybody was in regard to this lease was damaged it would be Central Forwarding, wouldn't it? They got stuck for $2,600.00 a month and they didn't occupy the building.

"A Maybe they were fortunate in growing to such an extent that the $2,600.00 didn't mean much."

Immediately thereafter, the attorney for the condemnor stated to the court that he proposed to introduce the disclaimer of Central Forwarding, Inc. A discussion between the court and the attorneys concerning the introduction of the disclaimer then ensued in the presence of the jury. In this discussion the attorney for the condemnor stated that if anybody was dam-

aged, it was Central Forwarding, Inc. and that he proposed to introduce a disclaimer to show that Central Forwarding was not claiming any damages.

Counsel for condemnee promptly filed a motion for mistrial contending that the remarks of opposing counsel were so prejudicial that the same could not be cured by an instruction. The trial court overruled the motion and instructed the jury that they could consider only the testimony and the evidence introduced and that they would not consider statements and remarks of the attorneys.

▇▇▇ It is conceded by both parties that in condemnation proceedings where there are several interests or estates in a parcel of real estate taken by eminent domain, the proper method of fixing the value of, or damage to, each interest or estate is to first determine the value of, or damage to, the property as a whole, and then to apportion the gross award among the several owners according to their respective interests or estates. It is further conceded that the statutes relating to eminent domain comprehend compensation for damage to property rather than for damage to persons. City of Waco v. Messer (Tex.Civ. App.), 49 S.W.2d 822; Aronoff v. City of Dallas (Tex.Civ.App.), 316 S.W.2d 302.

▇▇▇ The contention made is that the above-quoted question propounded by the attorney for the condemnor, together with his remarks in the presence of the jury, were prejudicial in that they amounted to testimony, advising the jury that they could consider damages to the person rather than compensation for damages to property, and that such prejudicial remarks confused or mislead the jury and caused them to return a verdict adverse to condemnee. We do not believe this conduct on the part of counsel can be accorded such weight. This was the only instance throughout the trial of the cause that there was any reference made to any damages which might have been sustained by the lessee, Central For-

warding, Inc. From the beginning of the trial the condemnor had taken the position that the condemnee had not sustained any damages to the remaining property, and thereafter they produced testimony to the effect that the remaining property had not been damaged by reason of the taking. The disclaimer was never introduced in evidence and there was nothing in the court's charge which would be calculated to indicate to the jury that they were being called upon to determine damages to the person rather than damages to property. Special Issue No. 3 required the jury to determine whether or not the market value of the remaining property was decreased in value as a result of the taking and they answered in the negative. There being evidence to support the jury's verdict finding no damages to the condemnee, we do not believe it can be said that this incident is such that it would be calculated to cause the jury to arrive at an improper verdict, especially in view of the court's prompt instructions to the jury that they would not consider the remarks and statements of counsel as any evidence in the case. In any event, we are of the opinion that the circumstances presented here are not such as would be calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure.

Nor do we believe that there is any error in the action of the trial court in refusing to permit the condemnee to withdraw its announcement of ready. Under our rules of procedure it is within the sound discretion of the trial court as to whether it will grant or refuse a litigant leave to withdraw his announcement of ready. Block v. Tarrant Wholesale Drug Co. (Tex.Civ. App.), 138 S.W.2d 874; McDonald Texas Civil Practice, Section 11.18, page 1004. In our opinion, no abuse of discretion is shown.

In the second Point of Error, condemnee contends that the trial court committed reversible error in failing to instruct the

jury that they would not consider the un-sworn testimony given by the attorney for the condemnor at the time he interrupted the closing argument for counsel for the condemnee.

The record reveals that while counsel for the condemnee was making his closing argument, he alluded to the failure of the condemnor to call an appraiser by the name of Cowley, who he contended was under the control of the condemnor. In response to this argument, Mr. McGee, counsel for condemnor, interrupted and the following exchange ensued:

"Mr. McGee: Your Honor, I have Mr. Cowley's appraisal here—

"Mr. Woodruff: Why didn't you offer it, then?

"Mr. McGee: I would be glad to—

"Mr. Woodruff: Why didn't you offer it in evidence?

"Mr. McGee: —to present it to the jury at this time. I am addressing my remarks to the Court and not to coun-sel.

"The Court: Ladies and gentlemen of the jury, while deliberating upon your verdict you will not mention or refer to any matter or fact or circumstance other than the evidence that has been produced in the Court.

"Mr. Woodruff: All right.

"Mr. McGee: There it is.

"Mr. Woodruff: The State had hired Mr. Cowley, who was out there with Mr. Addision, but we didn't see Mr. Cowley * * *."

■ Without doubt, an attempt on the part of an attorney to introduce documen-tary evidence for the first time during jury arguments is improper and will constitute reversible error if the effect flowing there-from was reasonably calculated to cause such prejudice to the opposing litigant that

an instruction by the court could not elimi-nate the probability that it resulted in an improper verdict. Texas Sand Company v. Shield, (S.Ct.) 381 S.W.2d 48; Levels v. St. Louis & H. Ry. Co., 196 Mo. 606, 94 S.W. 275.

■ The condemnor insists that since it was not shown that Cowley was employed by the state or that the state had any rela-tionship or control over him, counsel's argument accusing the state of failure to call him as a witness was improper and therefore the remarks of the state's coun-sel were invited. However, we find it un-necessary to decide whether it was invited, since we have concluded that, in any event, the offer of Cowley's appraisal, although improper, was not such as was reasonably calculated to cause and probably did cause the rendition of an improper judgment.

■ Before reversing the judgment be-cause of improper conduct on the part of counsel, it must appear not only was the conduct improper, but that it was such as to satisfy an appellate court after a review of all the evidence that it was reasonably cal-culated to cause and probably did cause the rendition of an improper judgment. Rule 434, T.R.C.P.; Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596.

It will be noted that counsel did not inti-mate in his statement what the witness Cowley would have testified to, nor did he intimate whether the appraisal report which he offered was favorable or unfavorable to the state. It therefore cannot be said that the jury received any evidence as a result of his remarks. Nor can it be said that the mere offering of the appraisal report had the effect of bolstering the previous testi-mony of Cowley because there was none. The vice hinges upon whether or not the remarks placed opposing counsel in a bad light before the jury to such an extent that they became prejudiced against his cause and therefore rendered an improper verdict.

In commenting upon the state's failure to produce the witness Cowley, counsel for condemnee no doubt intended to leave the inference with the jury that his testimony would be unfavorable to the state and would be favorable to the condemnee. The subsequent offer of the appraisal by the state without indicating whether it would be favorable or unfavorable probably did nothing more than arouse curiosity in the minds of the jury. As hereinafter demonstrated, condemnee produced testimony of two expert witnesses who testified that condemnee had suffered severe damages. In our view no juror of ordinary intelligence could have found any connection between this incident and the question of damages to the property. Moreover, we seriously doubt that the incident was sufficent to place counsel for condemnee in bad light before the jury, or prejudiced the jury to such an extent that we can say as a matter of law that it was calculated to cause and probably did cause the rendition of an improper verdict. Counsel for condemnee was not forced to object to the remarks because of the prompt action of the trial judge in instructing the jury that they would not consider the remarks of counsel.

■ It must be presumed that a jury obeyed the instruction of a trial judge to disregard a statement of a witness or counsel. Walker v. Texas Employers' Insurance Association, 155 Tex. 617, 291 S.W.2d 298; Transport Insurance Company v. Burditt (Tex.Civ.App.), 294 S.W.2d 248.

In light of the whole record, it seems more likely that the jury's findings were based on the evidence rather than on the prejudice, and we have therefore reached the conclusion that the remarks of counsel, although improper, were not such as were reasonably calculated to cause, and probably did cause the rendition of an improper judgment.

Condemnee's third and final point asserts that the verdict of the jury is contrary to the great weight and preponderance of the evidence.

■ Three valuation witnesses testified in the trial of this cause. Condemnee's witnesses Carmichael and Sherman both valued the part taken at $21,195.00. Condemnor's witness Addison valued the part taken at $19,138.00. The jury found that the market value of the part taken was $20,488.50. Upon the question of the damages to the remainder, condemnee's witness Carmichael estimated the damages at $36,000.00 and the witness Sherman estimated the damages at $42,000.00. Condemnor's witness Addison testified that he was of the opinion that there would be no damage to the remainder. It is undisputed that the property brought the same rent after taking as before. Although it is admitted that the taking did not damage or destroy any part of the warehouse building as such, condemnee contends that the evidence shows as a matter of law that they sustained damages because of the close proximity of the condemnor's fence and right-of-way line to the south side of the warehouse preventing ingress and egress resulting in inconvenience and increased labor cost in the use of the warehouse. In this connection we believe the jury could have very well attached some significance to the fact that the condemnee erected the south wall of the building in such a manner as to run parallel with the proposed highway right-of-way leaving a distance of only twelve feet between the two. Suffice it to say, we have reviewed the entire record and have concluded that the verdict of the jury is not so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

The judgment of the trial court is affirmed.